JOSEPH L. B. ALEXANDER AND GRACE M. ALEXANDER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 14360, 14359, 17474, and 17829.   Promulgated October 23, 1928.

*Walter E. Barton, Esq.*, for the petitioners.
*Leroy L. Hight, Esq.*, for the respondent.

OPINION.

MORRIS: The petitioners contend that inasmuch as they kept their books and made their returns on a cash receipts and disbursements basis, they realized no income during the years in question by reason of the construction of said building, because title did not pass to them, according to the terms of the lease, either at the time said building was completed in 1921 or at any time during the taxable

years in question. They rely strongly upon article 15 of the lease as indicating that title to the improvements was not to pass to the petitioners until the termination of the lease. They further contend that if there is any doubt as to that conclusion, said article is at least ambiguous and oral testimony is admissible to explain the lease. Oral testimony was offered, to which objection was made by counsel for the respondent, that it was the understanding between lessors and lessees that the building to be constructed under the lease would remain the property of the lessees until the termination of the lease.

Ordinarily permanent improvements erected upon leased property by the lessee result immediately in income to the lessor. *Miller* v. *Gearin* (C. C. A.), 258 Fed. 225; *Cryan* v. *Wardell*, 263 Fed. 248; *Gilbert Butler*, 4 B. T. A. 756; *Shelby D. Scott*, 9 B. T. A. 1219. The petitioners, in order to take their case out of the general rule, stress that language of article 15 of the lease which reads, " that, at the expiration of the term of the lease  *  *  *  such buildings and improvements shall become the property of said lessors without cost or expense to them or liability on their part to pay for the same or any part thereof." Considering all the provisions of the lease, however, we are satisfied that the above quoted language does not support the conclusion contended for by the petitioners. The lease provides that upon the termination thereof the lessees are to surrender possession of said premises, together with all the buildings and improvements thereon by whomsoever erected. It was therefore agreed that the improvements were to become a part of the realty and not subject to removal by the lessee. In *Cryan* v. *Wardell*, *supra*, the court, considering similar facts, said:

> I am of the opinion that under well-settled principles, aptly expressed in section 1013, Civil Code of California, the moment the building was erected, which the terms of the lease show was to become and remain an integral part of the land upon which it was constructed, the title thereto vested as completely in the plaintiff [lessor] as though constructed by the plaintiff herself. The terms of the lease clearly disclose that the erection of the building was a part of the consideration for the lease, and that it was provided for and taken into consideration in the rent reserved. It therefore became, upon its completion, a part and parcel of plaintiff's income-bearing property, and was subject to taxation in her as of that date. *City of Oakland* v. *Albers Bros. Milling Co.* (Cal. App.) 184 Pac. 868.

In *Bass* v. *Metropolitan Westside Electric R. Co.*, 82 Fed. 857, the appellant leased certain premises belonging to her for a term of 90 years, the tenant agreeing to erect a building to cost not less than $50,000, according to designs, plans and specifications to be approved by the lessor, and agreeing further to pay all taxes, rates, charges and assessments, and to maintain and repair all buildings and improvements. It was further provided that the tenant should keep the building insured for three-fourths of its value and in case of destruc-

tion or damage by fire, he should repair or rebuild the same, and in case of his failure to so rebuild, it was provided that all insurance money should belong to the lessor. The lease also provided that " in the event of the termination of the lease before the expiration of the term for breach of any covenant herein, the building, fixtures, and improvements on the premises shall be forfeited to and become the property of the owner of the fee, ' without any compensation therefor to the tenant.' " It was further provided that at the end of the term of 90 years the owner of the fee would purchase· the building and other improvements at 60 per cent of their cash value, or make a new lease for 40 years, at the expiration of which time the improvements should become the property of the owner of the fee without rendering any compensation therefor. The court, in holding that the buildings so erected, vested at once in the lessor, subject to the lessee's rights under the lease, said:

> While it is true that the intention to give the appellant a lien upon the building, as well as "upon all improvements and tenements, and the materials thereof at any time upon said leased premises," and on "other property" of the tenant on the premises, is plainly declared, and it is also stipulated that at the end of the term the owner of the fee shall purchase the building or extend the term of the lease, it is clear upon the whole instrument that in no event was a removal from the premises of the building, which the lessee undertook to erect and keep in repair, contemplated. On no conceivable contingency can there arise under the contract a right on the part of the lessee to remove the building, even were it a physical possibility to do so. In contemplation of law, the building was intended to be, and accordingly in the process of construction, it became, a part of the realty. "The well-settled rule is that such erections as this become a part of the land, as each stone and brick are added to the structure."

In the case of *Shelby D. Scott, supra,* the lease provided that at the termination thereof by default or otherwise, the respective owners of the land should have the sole and exclusive title to any part of the theater on his or their property and we reached the conclusion that the improvements resulted immediately in income to the lessor.

In regard to the oral testimony offered by the petitioners to prove the understanding of the parties regarding title to the improvements upon the realty, respondent's counsel objected to the testimony upon the ground that parol evidence is inadmissible to vary the terms of the written instrument entered into between the parties. The petitioners' counsel argues that although there can be no doubt about the construction of the lease, if the Board should hold that the lease is ambiguous as to whether title vested immediately in the lessors upon construction of the building, then parol evidence is clearly admissible to explain the intent of the parties. We are of the opinion that the terms of the lease are clearly stated and that there is

no ambiguity therein which would justify the use of parol evidence for the purpose urged here. Parol evidence is useful only for the purpose of aiding in the construction or interpretation of a written instrument where the language in the instrument itself does not clearly express the intention of the parties thereto. Such evidence can not be used, however, to read into the instrument that which was omitted therefrom when written and executed by the parties. We must therefore exclude the proffered testimony in so far as it tends to modify or add to the terms of the lease itself, which, as a matter of evidence, stands alone and is self-explanatory.

We have, however, received and incorporated the gist of that testimony in our findings of fact and will consider it as a collateral understanding between the parties contemporaneously with the making of the lease. That understanding, however, does not affect the conclusion hereinabove reached. The only manner in which the lessor, in whom title vested at the outset, could be divested of title, would be by some writing conformable to the statutes of the State of Arizona. Paragraph 2049, Title VIII, of the Revised Statutes of Arizona, 1913, provides:

No estate of inheritance or freehold or for a term of more than one year, in lands and tenements, shall be conveyed from one to another unless the conveyance be declared by an instrument in writing, subscribed and delivered by the party disposing of the same, or by his agent thereunto authorized by writing.

There being no provision in the lease for the vesting of title to the improvements in the lessee upon the completion thereof, and, relying, as we must, upon the rule of law as set forth in the hereinabove referred to decisions, that said improvements vested in the owner of the realty as soon as they become attached thereto, in the absence of an agreement to the contrary, and there having been no agreement or understanding which could be construed to have divested the lessor of title, we are of the opinion that the respondent was correct in finding that income accrued to the petitioners upon the erection of the improvements upon the realty.

The petitioners alleged that respondent erred in any event in finding that they had income prior to June 30, 1921, when the building was completed. Without passing upon the validity of article 48 of Regulations 62, which the petitioners only indirectly attack, subdivision (a) of that article provides that the lessor " may report as income at the time when such buildings or improvements are completed, the fair market value of such buildings or improvements, subject to the lease," or he may, as provided in subdivision (b) " spread over the life of the lease the estimated depreciated value of such buildings or improvements at the termination of the

lease and report as income for each year of the lease an aliquot part thereof." In other words, the regulations in effect say that the taxpayer earns income upon completion of the improvements upon his realty, but that he may compute the income upon the alternative method provided in subdivision (*b*) of article 48.

The second allegation of error urged by the petitioners is that the respondent erred in using a rate of 2 per cent in the computation of depreciation instead of 3 per cent. The only evidence offered by the petitioners bearing upon this question was with respect to the manner of construction of the improvements, from which we are unable to find that the rate used by the respondent was incorrect.

Reviewed by the Board.

*Judgment will be entered for the respondent.*