HEWITT REALTY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73109.   Promulgated February 23, 1934.

*Francis J. Sweeney, Esq.*, for the petitioner.
*George D. Brabson, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: The respondent determined a deficiency of $1,141.94 for the year 1931. The only error now urged is the inclusion in income of $10,312.89 representing a prorated part of the depreciated cost of a building erected by a lessee on land belonging to taxpayer-lessor.

The parties stipulated the facts substantially as follows:

The petitioner was at all times during the calendar year 1931 a corporation duly organized and existing under the laws of the State of New York, with its principal office at 50 Church Street, New York, New York.

Under date of May 1, 1929, the petitioner (hereinafter referred to as lessor) leased to the Tishman Realty & Construction Co., Inc., of 285 Madison Avenue, New York, New York (hereinafter referred to as lessee) a certain parcel of real property owned by the lessor and located at the corner of 57th Street and Lexington Avenue, New York, New York.

The written agreement between the lessor and lessee showed all the terms agreed upon by those parties and contained a legal description of the property concerned. Among its provisions were the following:

To HAVE AND TO HOLD said premises (subject as aforesaid) unto the Lessee from the first day of May, 1929, for and during the full term of twenty-one

(21) years thence next ensuing, that is to say, to and including the 30th day of April, 1950, unless sooner terminated as hereinafter provided;

\*          \*          \*          \*          \*          \*          \*

TWENTY-SECOND: In case, but only in case, this lease shall be in full force and effect, and the Lessee shall have erected the new building referred to in Paragraph number "Twentieth" hereof, and the Lessee shall not be in default under any of the conditions, covenants and agreements herein contained on its part to be kept and performed and complied with as hereinabove provided, the Lessor will at the expiration of the term hereinabove demised grant and execute unto the Lessee a renewal of this lease for a further term of twenty-one years from the expiration thereof, that is to say, until the 30th day of April 1971, provided the Lessee shall have given written notice to the Lessor of its election to exercise its option of such renewal thereof, by the service of such notice on the Lessor not less than one and not more than two years before the expiration of said original term, that is to say, after the first day of May, 1948, and on or before the first day of May 1949. In case of such renewal the annual basic rent, exclusive of all the items of additional rent as hereinabove provided shall be an amount equivalent to six (6%) per centum of the fair market value of the land considered as vacant and unimproved as follows, namely: For the first seven years of said renewal period, of the fair market value of the land as of the first day of May 1950, and for the second seven years thereof, of the fair market value of the land as of the first day of May 1957, and of the last seven years thereof, of the fair market value of the land as of the first day of May 1964. In the event of the failure of the parties to agree on the fair market value of the land as aforesaid by the first day of September preceding the first day of any such seven year period, such valuation shall be determined by arbitration in the manner hereinafter provided; provided, however, that irrespective of such valuation such annual basic rent shall be not less than the annual basic rent applying to the next preceding seven year period. Except for the increase in the amount of the annual rent which may result from such valuation and revaluations, such renewal lease shall contain each and all the conditions, covenants and agreements as contained in this lease, except the provision for the erection of a new building.

All the provisions of the written lease were in full force and effect during the entire year 1931.

Pursuant to the terms of the lease agreement the lessee during the year 1931 caused to be erected on the leased property a modern office building at a total cost to the lessee of $559,842.32, which amount was also the fair market value of said building on May 1, 1931, the date of its completion.

The new building in question was of steel and stone construction and had a depreciable life of 40 years.

By May 1, 1931, title to the new building mentioned above had passed to the lessor subject to the lease in question.

The lessor in its income tax return for 1931 reported no income by reason of the erection of said building and the acquisition of title thereto.

Respondent in his audit of the lessor's income tax return increased lessor's net income by the sum of $10,312.89, which represented the proper 1931 portion of the depreciated value of such building, as of May 1, 1950, computed on the basis of a 40-year life and spread over the period from May 1, 1931, to May 1, 1950.

There were similar provisions for two further extensions of 21 years each.

Petitioner contends that it realized no income from the erection of the building by the lessee. It argues that the lessor had only the title without enjoyment or beneficial use of the building, but cites no pertinent cases in support of its position.

In *Cryan* v. *Wardell*, 263 Fed. 248, where the Government attempted to tax to the lessor the entire value of a building erected by a lessee, at the termination of the lease, the court said: "It results that whatever accession of value resulted to plaintiff's property from the erection of the building in question accrued and became vested in her in 1910 (the date of its completion) and not upon the termination of the lease." To the same effect is *Miller* v. *Gearin*, 258 Fed. 225. In *United States* v. *Boston & Providence R.R. Corp.*, 37 Fed. (2d) 670, the court said:

A building erected on leased land under a covenant in the lease that it shall become and remain a part of the realty and the property of the lessor is treated by the Revenue Department, and properly so, as income of the lessor, presumably upon the ground that, on becoming a part of the realty, it has enhanced the value of the lessor's property to the amount it has added to its fair market value; and, while its cost as to the lessee may be treated as so much rental and be spread over the entire term of the lease in computing his income tax, the fair market value it has added to the lessor's property is taxable to the lessor in the year in which the building was constructed. *Miller* v. *Gearin*, supra; *Cryan* v. *Wardell*, supra.

Though the case before the court did not involve the specific question, the observation of the court indicates its view of the rule of law which should govern. See also *Joseph L. B. Alexander*, 13 B.T.A. 1169; *W. H. Martin*, 24 B.T.A. 813.

The respondent is not contending for the literal application of the above rule of law, but under the ameliorating provisions of article 63 (*b*) of Regulations 74 would allow the taxpayer to spread over the life of the lease the estimated depreciated value of the building, at the termination of the lease reporting an aliquot part each year of the lease. He thus would prorate the depreciated value over the original term, disregarding possible renewals.

We are of the opinion respondent's action should be sustained. The provisions of article 63 (*b*) of Regulations 74 are fair and equitable, and their application entirely justified in this case.

At the expiration of the 21-year original term there will remain on lessor's land a valuable building, the title to which was vested in petitioner in 1931. That the lease may not be considered as extending over possible renewal terms is well established. *Bonwit Teller & Co.*, 53 Fed. (2d) 381; *Bowman Hotel Corp.*, 24 B.T.A. 1193.

*Decision will be entered for the respondent.*