POLY HOLDING CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 74254.   Promulgated June 14, 1934.

*W. H. Wallace, Esq.,* for the petitioner.
*O. W. Swecker, Esq.,* and *Claude Kitchin, Esq.,* for the respondent.

912

OPINION.

ARUNDELL: The only question here is the amount of the deduction to be allowed to petitioner for depreciation of the building erected at its expense on leased premises. Section 23 (k) of the Revenue Act of 1928 provides for a reasonable allowance for exhaustion, wear and tear of property used in a trade or business, including a reasonable allowance for obsolescence. On petitioner's leasehold it has erected a building at a cost of $235,000 and it maintains the right to exhaust its cost over the original term of the lease, a period of 21 years, without regard to the life of the building, or the privilege of renewal. Petitioner relies on *Bonwit Teller & Co.* v. *Commissioner*, 53 Fed. (2d) 381, decided by the Court of Appeals for the Second Circuit, and also cites *719 Fifth Avenue Co.* v. *United States*, recently decided by the Court of Claims, 5 Fed. Supp. 909.

The respondent has found that the useful life of the building erected by petitioner is 40 years, and based on such a finding has allowed deductions for depreciation at the rate of 2½ percent per

annum on the basis of cost. Petitioner does not dispute the respondent's finding as to the useful life of the building and offers no evidence of earlier obsolescence nor any facts that would in any way suggest that the allowance made by the respondent is not reasonable. It stands squarely on the ground that, whatever its cost and whatever the circumstances surrounding the outlay, it is entitled to recover its capital sum over the original term of the lease. With this view we cannot agree, nor do we believe that *Bonwit Teller & Co., supra*, stands for such a broad principle.

It is our view that each case must be decided on its own facts, however desirable administratively it may be to have a rule of thumb. Taxpayers doing business in the manner of petitioner must ordinarily recover their capital from the income of the leasehold. To say that this must be done under all circumstances over the original term of the lease is as unreasonable as to require that in all cases the cost must be spread over the original term plus all renewal periods. It may be assumed that business men will not ordinarily place valuable improvements having a long and useful life on land that they can use but a brief period, and we see no reason why the presumption should be indulged in that such is the case. Cf. *Gladding Dry Goods Co.*, 2 B.T.A. 336. An illustration will serve better to bring out the point we are considering. A is the lessee of property the original term of which expires in two years. He erects on the property a building at a cost of $1,000,000, the annual rental of which would be $50,000. He has the right, however, to renew the lease for an added period of 30 years. To insist, under such circumstances, that A must recover his entire outlay over the two-year period would not be reasonable, for against the income not more than one tenth of the cost would be recovered. A fair statement of the case would make it clear that the large expenditure was made in the light of the renewal privilege and the reasonable allowance contemplated by the statute could be had only by spreading the cost over the renewal period, unless the useful life of the structure was less.

The *Bonwit Teller* case did not involve the facts we have here. In that case the improvements on the leased premises were made by the lessor at its expense, the lessee paying only interest on the cost of construction. Thus the lessee had no capital investment in the building to exhaust. The question before the court, in so far as the lessee was concerned, was whether the March 1, 1913, value of the lease should be exhausted over the original term of the lease or such term plus the possible renewals. When a case arose in the same court involving similar facts and the same question as we have here the court did not base its decision on the *Bonwit Teller* case,

but examined the evidence to determine what constituted a reasonable allowance for exhaustion of the portion of the building cost borne by the lessee. *379 Madison Avenue, Inc.* v. *Commissioner*, 60 Fed. (2d) 68. That the court did not overlook its earlier *Bonwit Teller* decision is shown by the citation of the case on another question, decided, and this is persuasive that it did not intend in the *Bonwit Teller* case to lay down an arbitrary rule to be applied to all cases of exhaustion on leased property. In the *379 Madison Avenue* case the evidence indicated that by reason of changed conditions in the neighborhood to which the building on the leased premises could not be conformed the building would be valueless by the end of the original term. On these facts the court concluded it was " highly improbable that either party to the lease will insist upon a renewal at a time when the building upon the property will be unable to earn a return on the value of the ground ", and allowed exhaustion on the lessee's share of the cost over the original term. Similarly in the case in the Court of Claims, *719 Fifth Avenue, supra*, it was found as a fact that the renewal privilege was of no value to the lessee. When the *719 Fifth Avenue* case was before this Board the evidence did not satisfactorily establish the value, or lack of value, of the renewal privilege. We said in part that " The word ' reasonable ' in the statute implies an appraisal of the probabilities. An examination of the lease in its entirety indicates that the parties contemplated that the lessee would continue to occupy the premises and that provision should be made for an alteration from time to time of the rental." (5 B.T.A. 565, 569.) In the instant case, as above pointed out, petitioner offered no evidence that the building erected by it would be of so little value at the end of the original term as to make renewal unlikely, and in this respect the facts differ from those in the *379 Madison Avenue* case, and the *719 Fifth Avenue* case in the Court of Claims.

The facts and the question here are the same as in *353 Lexington Avenue Corp.*, 27 B.T.A. 762. In that case we pointed out that there is no requirement in the statute that the cost of a leasehold and the cost of improvements made by the lessee should be exhaustible over the same period. In that case as here the rental under any renewal was to be based on the value of the land without reference to the improvements, and we said that the land and improvements should be regarded as separate pieces of property, and deductions for exhaustion allowed accordingly. That case is controlling here. As said above, the language of the statute is that a reasonable allowance for exhaustion shall be made. Where the respondent has made a determination of what constitutes a reasonable allowance, that deter-

mination on the presumption of correctness must prevail in the absence of sufficient evidence to establish error. In this case we have no evidence that the building will not earn sufficient income to meet rentals or of any other facts indicating the improbability of renewal. Consequently, we cannot say that its useful life to petitioner will be any shorter than that determined by the respondent, nor can we find what is more directly in point that the useful life of the building will be limited to the original term of the lease.

Reviewed by the Board.

*Decision will be entered for the respondent.*

TRAMMELL and VAN FOSSAN dissent.

---

ADAMS, dissenting: I am unable to agree to the prevailing opinion in this proceeding. I think that this case is controlled by the doctrine laid down by the Circuit Court of Appeals for the Second Circuit in the case of *Bonwit Teller & Co.* v. *Commissioner*, 53 Fed. (2d) 381, which was followed by the Court of Claims in *719 Fifth Avenue Co.* v. *United States*, 5 Fed. Supp. 909. In *Bonwit Teller & Co. supra*, the court said:

It was also error to extend beyond the term of the lease the period over which exhaustion of the leasehold is to be spread. The renewal privilege had not been exercised and may never be. There was no evidence as to the value of this privilege as a separate element in the valuation of the leasehold. * * * The problem is to compute the amount of exhaustion during the taxable year of "property used in the business". The property here in question was a leasehold having nineteen years to run, and containing an option to renew for twenty-one years at a rental to be determined by an appraisal of the property to be made at the time of renewal. Despite the uncertainty of the rental to be paid during the extension, the option may give additional value to the lease, just as many other types of provisions might give the lease value. But it is still true that the property being used in the business (the leasehold) will be exhausted in nineteen years. If the option should be exercised at the end of the existing term, there will be created a new term (new property) to be thereafter used in the business. The new term, when created, may or may not have value; if it has, allowance for the exhaustion of such new term will be in order. Let it be supposed that the option contained in the lease in question were to purchase the property at the end of the term. Such an option might readily enhance the value of the lease, but it could hardly be supposed to change the period during which the lease will become exhausted. Similarly in the case at bar we see no basis for extending the period of exhaustion beyond the end of the term which was valued. See Appeal of *Lenox Land Co.*, 5 B.T.A. 1206, 1210; *Hinkel Dry Goods Co.* v. *Commissioner*, 10 B.T.A. 228.

There is no testimony in the record which indicates what value, if any, the option to renew the lease had. The stipulation states specifically that petitioner has not decided as yet to renew the lease at the

expiration of the first term of 21 years; nor has it given any indication of its action in that regard.

Where one makes improvements, which are fixtures in their nature, upon the property of another, the title to such improvements is in the owner of the land; and if such improvements are made by the lessee, in the absence of a specific contract, when the lease expires such fixtures, having become a part of the realty, belong to the lessor. Where the lessee of vacant property makes valuable improvements in the nature of fixtures on such property, the expenditures made by the lessee for this purpose become to him a part of the cost of his lease. I am unable to see how in arriving at the cost of the lease we may separate and treat in a different manner that which the lessee pays in money directly to the lessor and that which he expends in the improvements of the lessor's property, and I am of the opinion that such expenditures constitute a part of the cost of the leasehold to the lessee, and that for the purposes of taxation such expenditures should be treated in no different manner from that where the entire consideration for the lease is paid in cash.

The whole scheme of income taxation is built on an annual accounting period, and to postpone until the end of the term a substantial portion of the cost of the lease, on the assumption that if the lease is not renewed the lessee will be entitled to a loss for the portion of his expense not ratably deducted on his annual returns during the period of the lease, results in a distortion of income inconsistent with the theory of annual accounting periods. Moreover, the lessee may not realize income on the last year of his term from which he can deduct, as a loss, the balance of his expenditure.

In *Hewitt Realty Co.*, 29 B.T.A. 1205, we had before us the lessor of real property on which the lessee had erected a valuable building which became the property of the lessor, subject to the lease. In that case the original lease was for the term of 21 years, with three possible renewals for like terms. The useful life of the building so erected was 40 years. In that case the Commissioner determined that the estimated depreciated value of the building at the date of expiration of the original term of the lease represented income to the lessor and added an aliquot part of income for the taxable year. This determination of the Commissioner we sustained. There the petitioner, lessor, contended that it realized no income from the erection of the building by the lessee. It argued that the lessor had only the title without enjoyment or beneficial use of the building. In that case we said:

In *Cryan v. Wardell*, 263 Fed. 248, where the Government attempted to tax to the lessor the entire value of a building erected by a lessee, at the termina-

tion of the lease, the court said: " It results that whatever accession of value resulted to plaintiff's property from the erection of the building in question accrued and became vested in her in 1910 (the date of its completion) and not upon the termination of the lease." To the same effect is *Miller* v. *Gearin*, 258 Fed. 225. In *United States* v. *Boston & Providence R.R. Corp.*, 37 Fed. (2d) 670, the court said:

"A building erected on leased land under a covenant in the lease that it shall become and remain a part of the realty and the property of the lessor is treated by the Revenue Department, and properly so, as income of the lessor, presumably upon the ground that, on becoming a part of the realty, it has enhanced the value of the lessor's property to the amount it has added to its fair market value; and, while its cost as to the lessee may be treated as so much rental and be spread over the entire term of the lease in computing his income tax, the fair market value it has added to the lessor's property is taxable to the lessor in the year in which the building was constructed. *Miller* v. *Gearin, supra; Oryan* v. *Wardell, supra.*"

I am persuaded that an equitable application of the rule therein laid down requires the reversal of the Commissioner's determination in this proceeding.

I think that under the facts in this case the petitioner should be permitted to take as an allowance for depreciation an aliquot part of the cost of the improvements over the unexpired term of the original lease.

The prevailing opinion cites as authority for its holding *379 Madison Avenue, Inc.* v. *Commissioner*, 60 Fed. (2d) 68, for the purpose of showing that the Circuit Court of Appeals in that case based its decision on the fact that the lease would in all probability not be renewed. This I think to be too narrow a construction of that opinion. I believe that that case was decided under the doctrine laid down in *Bonwit Teller & Co., supra.*

The prevailing opinion cites *353 Lexington Avenue Corp.*, 27 B.T.A. 762, as authority for the holding here. I agree that that case is controlling, but, in my opinion, the holding there was erroneous and should be overruled.

In substance, the holding of the majority in this case would permit the Commissioner to speculate as to what contract the parties would or might enter into in future and would permit this Board to make findings upon what it presumed would be done by parties in relation to their business affairs and property hereafter. I think that, in the absence of some testimony, we would not be justified in indulging in such speculation.

Entertaining these views, I believe the determination of respondent should be reversed.

LANSDON and SEAWELL agree with this dissent.[1]

---

[1] Prepared during Mr. Lansdon's term of office.