JULIA WILLMS SLOAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84886.   Promulgated July 27, 1937.

*George M. Brady, Esq.*, for the petitioner.
*A. E. Arent, Esq.*, for the respondent.

OPINION.

MILLER: Two questions are raised by this case: (1) Whether petitioner realized any gain from the alteration, by the lessee, of the building which she owned at 306–310 North Howard Street, Baltimore, Maryland, because of improvements thereto and a resulting enhancement of value of the building, and, if so, (2) whether such gain would be realized only after the sale of the property by the lessor, or whether it was realized when the improvements were completed and it then became proper for the Commissioner to spread, over the period of the lease, an aliquot portion of such gain as income for each year thereof.

(1) The value of the building was greatly increased by the improvements made by the lessee. The alterations which were made produced a substantially new building, with an entirely new and handsome front and a new roof. Old portions of the building were incorporated so skillfully into the reconstructed one as to give them permanence equal to that of the new additions.

The lease provided that upon its termination the lessee might remove all lighting and trade fixtures installed by it, provided that it surrendered the premises in a tenantable state and condition in all respects. The petitioner failed to show what part of the cost of improvements was attributable to the installation of such fixtures; and thus failed to sustain her burden of proof. The Commissioner conceded approximately $8,000 for this purpose. His determination under the circumstances is entitled to a presumption of correctness.

Petitioner's contention is based not so much on the theory that the lessee may remove lighting and trade fixtures pursuant to the terms of the lease as on the theory that improvements permanent in character, such as the stairway, ironwork, and flooring must be removed by the lessor "unless you find somebody who is willing to buy or rent that particular class of building"; and that when such improvements have been removed, the losses resulting from the destruction of the property would be greater than the value of the improvements. We have considered and rejected the same argument, in *Shelby D. Scott*, 9 B. T. A. 1219, as applied to a motion picture theatre. In the instant case petitioner's argument is even less pertinent. Her own witness testified that the trend of small retail business is away from the area in which her building is located, because of the growth of such shops in outlying centers of the city. On the other hand,

because of the presence of motion picture theatres and large department stores in this area, the Oriole Cafeteria seems to be ideally located and the prospect of successful renting of the building for such purposes seems even more favorable than for a small retail shop.

It is true the evidence indicated that the building, after the alterations, was not so well adapted for the purpose of a retail shop and that to reconvert it for that purpose would require tearing out the present front, reinstalling show windows, removing the arched ceiling and the front stairs, reinstalling an elevator, and various other changes. In short, the new building would not be suitable for a retail shop without complete reconversion. Moreover, the petitioner contends that the improvements, while admittedly increasing the building's value as a cafeteria for so long as it should be occupied by the present lessee, were of such a peculiar and eccentric character that they really decreased its value. However, these facts and contentions are fully met by abundant evidence of the highly successful business conducted by the lessee, Oriole Cafeterias, Inc. Petitioner's witnesses were all skeptical in the beginning as to the wisdom of the changes proposed and as to the possibility of such success, but they enthusiastically admitted their error in the light of subsequent events. The property admittedly was bringing a higher rent than in previous years and the lease provided for an increase in rent every five years. The marked success of the tenant's business, however unexpected it may have been to the petitioner, showed every indication of continuing. In these circumstances, we think the fact that the building might not be used as a retail shop without substantial changes is immaterial, and the possible necessity of the building's reconversion may be disregarded. *Shelby D. Scott, supra.* We hold, therefore, that the petitioner realized income from the alterations made by the lessee, because of the enhanced value of the property which resulted therefrom.

(2) The second question is, When did the improvements made by the lessee become income to the petitioner? It was expressly provided by paragraph 8 of the lease that "any alterations, additions and improvements made by the Lessee shall immediately be and become the property of the Lessors, without payment of compensation therefor to the Lessee", with a right reserved to the lessee to remove on expiration of the lease all lighting and trade fixtures. It was further provided by paragraph 9 that no improvements were to be made by the lessee without the approval of the lessors in writing. This approval was given.

By article 63 of Regulations 74, the Commissooner established the following practice:

ART. 63. *Improvements by lessees.*—When buildings are erected or improvements made by a lessee in pursuance of an agreement with the lessor, and such

buildings or improvements are not subject to removal by the lessee, the lessor may at his option report the income therefrom upon either of the following bases:

(a) The Lessor may report as income at the time when such buildings or improvements are completed the fair market value of such buildings or improvements subject to the lease.

(b) The lessor may spread over the life of the lease the estimated depreciated value of such buildings or improvements at the termination of the lease and report as income for each year of the lease an aliquot part thereof.

\* \* \* \* \* \* \*

The Commissioner has since construed this article to include improvements permitted to be made by the lessee, although not required under the lease, G. C. M. 10969, C. B. XI–2, p. 64.

In the instant case it is apparent that the Commissioner has used the alternative method of apportioning, over the period of the lease, the income realized in the year of the completion of the improvements. This method has been approved in our earlier decisions. *Shelby D. Scott, supra; Joseph L. B. Alexander,* 13 B. T. A. 1169; *Cataract Ice Co.,* 23 B. T. A. 654; *W. H. Martin,* 24 B. T. A. 813; *Louise C. Slack et al., Executors,* 35 B. T. A. 271; *Emma C. Morphy,* 35 B. T. A. 289.

The petitioner relies on *Hewitt Realty Co.* v. *Commissioner,* 76 Fed. (2d) 880, in which the Circuit Court of Appeals for the Second Circuit, reversing this Board, 29 B. T. A. 1205, rejected the Commissioner's method of determining realization of income, as constitutionally unsound.

In the recent case of *Emma C. Morphy, supra,* we gave careful consideration to the decision in *Hewitt Realty Co.* v. *Commissioner, supra,* and, relying upon the cases of *Miller* v. *Gearin,* 258 Fed. 225, and *Cryan* v. *Wardell,* 263 Fed. 248, came to the conclusion that, since no other court had adopted the theory of the *Hewitt Realty Co.* case, we should adhere to our former opinion and again sustain the validity of the contested regulations. See also *United States* v. *Boston & Providence Railroad Corporation,* 37 Fed. (2d) 670. Pursuant to that conclusion we sustain the Commissioner here.

*Decision will be entered under Rule 50.*