**KENTUCKY BLOCK COAL CO. v. LUCAS,**
Collector of Internal Revenue.
No. 1219.

District Court, W. D. Kentucky.
Feb. 17, 1933.

E. J. Wells, of Louisville, Ky., for plaintiff.

T. J. Sparks, U. S. Atty., and Frank A. Ropke, Asst. U. S. Atty., both of Louisville, Ky., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Daniel A. Taylor and Lester L. Gibson, Sp. Attys., Bureau of Internal Revenue, all of Washington, D. C., for defendant.

DAWSON, District Judge.

This is a suit for a refund of income taxes for the year 1919 and the interest thereon, claimed by the plaintiff to have been erroneously exacted by the Commissioner. The facts out of which this case arises are, briefly, as follows:

The plaintiff was organized as a Kentucky corporation in 1913, and subsequent to its incorporation and prior to 1919 it developed and operated a coal mine in Perry county, Ky. Some time prior to the first of 1919, the Kentucky Block Mining Company was organized as a Kentucky corporation. These two corporations, about the first of the year 1919, or shortly prior thereto, agreed upon the terms of a lease of the mine and equipment of the plaintiff to the Kentucky Block Mining Company for a period of five years, with the right in the Kentucky Block Mining Company to purchase from the plaintiff at the end of the lease the mine and its equipment for a stipulated price. By the terms of the lease agreed upon, the plaintiff was to be paid a rental of $42,000 per year.

The minutes of the board of directors of each company show that the terms of the contract of lease were approved by the board of directors of each of the companies, but the contract was never actually signed by the parties. About the first of the year 1919, however, the Kentucky Block Mining Company took possession of the premises and property covered by the lease, and operated the mine until about April 1, 1920, at which time, by mutual agreement of the parties, the property was turned back to the plaintiff. The Kentucky Block Mining Company, during the time it operated the property, paid the rental at the rate of $42,000 per year, as stipulated in the lease agreement.

During the year 1919 the lessee purchased and laid in the mine at its own expense rails, which cost it $1,478.04, and made repairs and additions to miners' houses costing $4,648.61, and also purchased and placed in the mine an electric hauling locomotive, for which it paid the sum of $4,426. The agreement under which the lessee operated contained no provision as to the rights of the parties with reference to these expenditures upon termination of the lease, but, when the lease was surrendered by mutual agreement about April 1, 1920, the rails were in position in the mine, and were turned over to the plaintiff, as was the locomotive, without any cost to the plaintiff; and of course the plaintiff got the benefit of the repairs and additions to the miners' houses, and for this expenditure the lessee was not reimbursed. The lease agreement did not specifically require the lessee to make any of the expenditures referred to, although it did provide that the lessee should keep in good repair all buildings of every kind located on the leased premises, and to repair and replace worn out, broken, injured, impaired, or lost machinery and parts, and to return the property in as good condition as when received, ordinary wear, etc., excepted.

The lessee company in its tax return for the year 1919 was allowed by the Commissioner to deduct the cost of the rails, the locomotive, and of the repairs and additions to miners' houses as an operating expense; but, on a reaudit of the plaintiff's return, the amount paid by the lessee for these items was treated by the Commissioner as income to the plaintiff, the lessor, and the tax involved in this case resulted from this addition to the plaintiff's reported income for the year 1919.

Counsel have spent a great deal of time in their briefs in discussing whether the expenditure of the items referred to should be treated as operating expense or as a capital expenditure. As I view the case, however, while this question was one of importance in determining the income of the lessee, it is of no material importance in determining the taxable income of the plaintiff, the lessor. The plaintiff has received the full benefit of each of these expenditures without being out of pocket therefor. The result to the plaintiff has been the same as if so much money had been actually paid over to it by the lessee. The vital question in this case is: When did the property acquired through these expenditures become the property of the plaintiff?

There is no claim, or at least there is no proof, in this case that the electric locomotive was placed by the lessee upon the property in compliance with the clause of the lease requiring it to replace worn out or damaged machinery. On the contrary, I think the proof clearly establishes that it was in the nature of additional equipment placed upon the property by the lessee for its own benefit. It was the lessee's property, and, nothing else appearing, it undoubtedly had the right to remove same from the leased premises upon termination of the lease. At no time during the operation of the property by the lessee was this locomotive the property of the plaintiff. According to the record in this case, it did not become the property of the plaintiff until the lease was terminated by mutual agreement on April 1, 1920, and it would not have then become the property of the plaintiff except for the fact, as testified to by the witnesses, that the lessee voluntarily turned same over to the plaintiff.

I therefore hold that the value of this locomotive at the time it was surrendered to the plaintiff was, in effect, that much income received by the plaintiff at the time of such surrender. As this took place in 1920, it follows, of course, that its value cannot be treated as income received by the plaintiff in 1919.

I am inclined to the opinion that the carload of rails must be regarded as personal property, even after the rails were laid in the mine, and that, in the absence of an agreement to the contrary, the lessee had a right to remove same upon termination of the lease. Therefore title to these rails did not pass to the plaintiff until the termination of the lease in April, 1920, and then only by virtue of the fact that the lessee voluntarily turned them over to the plaintiff with the rest of the leased premises and property. I do not think the fact that the lessee was operating under a verbal lease, which could be terminated at any time, alters the situation. As the record fails to show any obligation to leave this personal property upon the premises upon termination of the lease, it continued the property of the lessee, and became the property of the plaintiff only through the voluntary act of the lessee upon termination of the lease.

As to the repairs and additions to the houses, it seems to me a different situation is presented. These repairs and additions when made immediately became a part of the realty, in the absence of an agreement to the contrary, and the proof fails to show any such agreement. Therefore these additions and repairs inured to the benefit of the plaintiff, lessor, immediately upon being made, and their value to the plaintiff should be charged as income to it for the year 1919. The burden being upon the plaintiff to show that this value in 1919 did not equal the amount spent by lessee therefor, and the Commissioner's determination in this respect being prima facie correct, I hold that the sum of $4,648.61, spent by the lessee in this respect, must be treated as income received by the plaintiff in 1919.

A judgment, with finding of facts in line with the views here expressed, may be prepared by counsel and presented for entry.