## HEWITT REALTY CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 68.

Circuit Court of Appeals, Second Circuit.

April 8, 1935.

CHASE, Circuit Judge, dissenting.

———————◆————

Francis J. Sweeney, of New York City (Albert S. Wright, of New York City, of counsel), for petitioner on review.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Carlton Fox, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

Although I am not in accord with the majority as to the proper disposition of this petition to review, I shall state the facts and what I believe to be the applicable law requiring not only a reversal of the order but a remand to the Board of Tax Appeals for further proceedings. For the reasons which appear in the opinion written by Judge HAND, however, the order will be reversed and the deficiency expunged.

The petitioner is a New York corporation which owned, and on May 1, 1929, leased, real estate consisting of land and buildings located at the corner of Lexington avenue and Fifty-Seventh street, in New York City, for the original term of twenty-one years with a contingent option to the lessee to renew for three successive like periods. The rent reserved was subject to adjustment at intervals, but only on the basis of the fair market value of the land considered as vacant and unimproved plus an unvarying sum agreed to be the rental value of the buildings on the land at the time the lease was executed. Provision was made for the maintenance of security by the lessee for the payment of the stipulated rent.

The lessee was given the option, but was not required, to replace the original buildings and in the event that it did replace them was no longer required to maintain other security for the payment of rent. The lessee's option to renew the lease was contingent upon its erecting a new building upon the land. And by the express terms of the lease the title to any new building erected by the lessee was to vest in the lessor at once.

The lessee did erect a new building on the land in 1931 and the title thereto passed to the petitioner in that year. It had a fair market value of $559,842.32 on the date of its completion on May 1, 1931, and a depreciable life of forty years.

In reporting its income for 1931, the petitioner included nothing because of the erection of the building and its acquisition of the title to it, but the Commissioner increased its net taxable income by adding $10,312.89. The parties agree that this "represented the proper 1931 portion of the depreciated value of such building, as of May 1, 1950, computed on the basis of a forty-year life and spread over the period from May 1, 1931 to May 1, 1950." In other words, the Commissioner added as income the proper aliquot part of the depreciated value of the building for the year in question on the assumption that the controlling term of the lease was twenty-one years and that Art. 63 of T. R. 74 promulgated under the Revenue Act of 1928 is valid. Admittedly the action of the Commissioner conformed to the regulation, but the petitioner insists that the regulation is invalid.

The now essential part follows:

"Art. 63. Improvements by lessees. When buildings are erected or improve-

ments made by a lessee in pursuance of an agreement with the lessor, and such buildings or improvements are not subject to removal by the lessee, the lessor may at his option report the income therefrom upon either of the following bases:

"(a) The lessor may report as income at the time when such buildings or improvements are completed the fair market value of such buildings or improvements subject to the lease.

"(b) The lessor may spread over the life of the lease the estimated depreciated value of such buildings or improvements at the expiration of the lease and report as income for each year of the lease an aliquot part thereof."

It was the lessor's option under above subdivision (b) which the Commissioner undertook to apply in determining the deficiency. The regulation of necessity is based upon the theory that, when upon the completion of improvements to old buildings or the erection of new buildings by the lessee upon leased land, the rights of the lessor under the lease are such that the new construction then becomes his permanent property subject to the lease, any increase in value then acquired which will not be exhausted during the life of the lease is additional rent paid at that time and taxable to the lessor in that year as income. It has been held that when the lease requires the lessee so to increase the value of the lessor's property the added value is taxable as income to the lessor, if taxable at all, in the year the value of his property was enhanced. Miller v. Gearin (C. C. A.) 258 F. 225; Cryan v. Wardell (D. C.) 263 F. 248. See, also, United States v. Boston and Providence R. R. (C. C. A.) 37 F.(2d) 670; Crane v. Commissioner (C. C. A.) 68 F.(2d) 640.

Nevertheless, the present case is said to be distinguishable in that under this lease the lessee was not bound to construct the new building. It is urged upon us that, although the legal title to the new construction became the property of the lessor by virtue of the lease, this title was so encumbered that the lessee could exercise options which entitled it to the exclusive use of the new building for a period in excess of its agreed depreciable life of forty years so that the acquisition of income in 1931 by the receipt of additional rent on account of the construction of the building is but

a theoretical concept which fails to take into account actual facts.

The basic authority for the imposition of the tax upon the income of the petitioner, a corporation, is found in section 13 of the Revenue Act of 1928 (45 Stat. 791, 797), which laid a tax upon the net income of every corporation. That sort of a tax has been a part of the scheme of income taxation since the sixteenth amendment became effective. The purpose has been to subject all net income to taxation. Irwin v. Gavit, 268 U. S. 161, 45 S. Ct. 475, 69 L. Ed. 897; and to do that in the taxable period it is "realized," Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570; Burnet v. Logan, 283 U. S. 404, 51 S. Ct. 550, 75 L. Ed. 1143.

It will help to look briefly to the background of the regulation the petitioner urges us to hold invalid. For a time the Commissioner treated improvements that became the property of the lessor when made upon leased land by a lessee as income to the lessor to the extent of their value at the termination of the lease. To this end, Art. 4 of T. R. 33 approved on October 3, 1917, was promulgated under the Revenue Act of 1916 as amended in 1917. Previously the Treasury Department had so ruled. Vol. 19 of the Treasury Decisions—Internal Revenue Laws, pp. 25, 26. And Art. 48 of Reg. 45 approved April 17, 1919, under the Revenue Act of 1918 was to the same effect. The next month Miller v. Gearin, supra, was decided. It was held in that case that whatever income was derived by the lessor on account of the construction of a new building on leased land which the lessee was bound to build under the terms of the lease and which became the property of the lessor when built was realized in the year of construction rather than in the year when the lease was forfeited and the lessor took possession. This decision was clearly contrary to the regulations above noted and, after a petition to the Supreme Court for certiorari had been denied, 250 U. S. 667, 40 S. Ct. 13, 64 L. Ed. 1197, the effect of the decision was reflected in a change in the regulations. Art. 48 of Reg. 45 was, accordingly, amended with suitable provision for adjustment of the amount returned as income either if the lessor obtained possession and control of the property, for any reason other than a bona fide purchase of the lease

from the lessee, before the term had run, or if the property was destroyed before the termination of the lease.[1]

The alternative method of returning such income by spreading it over the life of the lease in accordance with subdivision (b) of Reg. 74, Art. 63, supra, was first permitted in Art. 48 of Reg. 62 approved February 15, 1922, and promulgated under the Revenue Act of 1922. With few changes, none of which are material to the issue here, this requirement for returning such income either one way or the other has been kept in successive regulations. In the meantime Congress has several times amended the income tax laws without disapproving the method of returning income required by the regulation. In view of this, the regulation should now be treated as an administrative interpretation of the statute which has been approved by Congress. Brewster v. Gage, 280 U. S. 327, 50 S. Ct. 115, 74 L. Ed. 457; McCaughn v. Hershey Chocolate Co., 283 U. S. 488, 51 S. Ct. 510, 75 L. Ed. 1183; Shearman v. Commissioner (C. C. A.) 66 F.(2d) 256; Watts v. Commissioner, 75 F.(2d) 981. To be sure, what is not in fact income cannot be made income by legislative fiat. Eisner v. Macomber, supra. Neither can it be made income by a regulation which conforms to a statute. The regulation, however, is valid provided what it undertakes to subject to taxation is income.

The lessee took the lessor's property as it was and agreed to pay rent. That rent was certainly income to the lessor. In part it was payable in money and in part payable in additions to value, if any, if the lessee elected to use the land for the purpose of erecting and maintaining upon it a new building. It did so elect, and the price it had to pay under the lease was to have the title to the new building become the property of the lessor at once subject to the lease. That was what the lessor received as additional rental for that additional use of its land under the lease. It was derived from the lease just as was the rent it received in money. If the title to the new building had, in view of the fact that it was subject to the lease, any present value in the year it was acquired, that value was a gain to the lessor growing out of the use of its land by the lessee. Although this gain became a part of the real estate from which it was derived, this was so only because the lessor agreed to receive the title to any new building constructed by the lessee upon the leased land in payment for the use of the land for that purpose. Incidentally, it paid for the option to renew the lease for successive terms. Any present value such title may have had in 1931 was a gain then derived by the lessor from its leased land and as such was income realized therefrom.

The valuation of the new construction is to be made with due regard for the fact that it is subject to the lease, whether return is made under subdivision (a) or (b) of Art. 63, Reg. 74. Under (a) it is "the fair market value of such buildings or improvements subject to the lease." Under (b) it is an aliquot part for each year of the estimated depreciated value at the ter-

---

[1] Reg. 46; Art. 48. When buildings are erected or improvements are made by a lessee in pursuance of an agreement with the lessor, and such buildings or improvements are not subject to removal by the lessee, the lessor receives income at the time when such buildings or improvements are completed, to the extent of the fair market price or value of such buildings or improvements subject to the lease. This amount would ordinarily be the difference between the value of the land free from the lease without such improvements and the value of the land subject to the lease with such improvements. If, for any other reason than a bona fide purchase from the lessee by the lessor, the lease is terminated, so that the lessor comes into possession and control of the property prior to the time originally fixed for the termination of the lease, the lessor receives additional income for the year in which the lease is so terminated to the extent that the value of such buildings or improvements when he became entitled to such possession exceeds the fair market price or value thereof to him as determined when the same completed became part of the realty. No appreciation in value due to causes other than premature termination of the lease shall be included. Conversely, if the buildings or improvements are destroyed prior to the termination of the lease the lessor is entitled to deduct as a loss of the year when such destruction takes place the fair market price or value of such buildings or improvements subject to the lease as determined when the same completed became a part of the realty, or the value thereof subject to the lease on March 1, 1913 less any salvage value subject to the lease, to the extent that such loss was not compensated by insurance. See Articles 109 and 164.

mination of the lease. And in either event provision is made in the regulation for proper adjustment either if the lessor obtains possession, or if the property is destroyed, before the end of the term. In this way the variables due to unforseeable future events are provided for, and what is required to be reported as income is realized in the year it is required to be reported. The actual increase in the value of the lessor's property, or in the alternative but a part of that increase, due to the improvements made by the lessee, is all that the regulation requires to be reported as income in the taxable year in which the addition to value occurs and becomes the property of the lessor in payment for the use of the leased land. It is properly accountable for then as taxable income although the owner's possession and use is postponed. Poe v. Seaborn, 282 U. S. 101, 51 S. Ct. 58, 75 L. Ed. 239.

It does not follow as a matter of law that every time changes are made in leased buildings, or new buildings are constructed upon leased land, by a lessee, that the lessor's property is increased in value simply because he acquires the title to the new construction. Whether there is an increase in value is a question of fact which will vary as the circumstances vary. That bears upon the applicability of the regulation rather than its validity. Nor is this case distinguishable from Miller v. Gearin, supra, on the ground that here the new building was constructed by the lessee as a matter of right only and not of obligation. It was erected in accordance with the terms of the lease, in pursuance of an agreement with the lessor, and became the property of the lessor when erected. The effect upon the value of the property of the lessor after the construction was no different because the lease permitted the lessee to build than it would have been had the lease required the lessee to build.

There is, however, the ground on which the correctness of the deficiency assessed is challenged. The depreciated value of the building was computed upon the original term of the twenty-one year lease only and the lessee's option to renew for like periods was disregarded. In Bonwit Teller & Co. v. Commissioner, 53 F.(2d) 381, 82 A. L. R. 325, we held that a lessee with a renewal option could not be compelled to spread his deductions for exhaustion beyond the original term when his lease had been valued for that term. As that value

would be exhausted at the end of the term, the exhaustion allowance could be taken on the same basis although the lessee, there the taxpayer, might create another term by renewal. It was pointed out that if the lessee should create a new term by renewal, the value, if any, of that term would be the basis for a new exhaustion allowance. Those considerations are not present here. Besides the distinction that we are ostensibly, at least, dealing with income and not with deductions from income, in order to justify the assessment of any tax against the lessor in the year the building was constructed it must be shown that the value of its property subject to the lease was then increased. The increase in the value of the property subject to the lease in the year the new building was completed was the increase, if any, in the value of the title to that property encumbered by the lease. That encumbrance put it in the power of the lessee to deprive the lessor of possession and control of the building during all the time it had value. Under subdivision (b) of Art. 63, Reg. 74, the lessor is entitled to spread over the life of the lease the estimated depreciated value of the building at its termination and, as the life of the lease may be extended by the lessee beyond the depreciated life of the building, it seems clear that the depreciated value of the building at the termination of the lease cannot be correctly determined in order to apply the regulation unless consideration is given to the lessee's right to renew without any increase in the rent based upon any added value to the property due to the erection of the building. The creation of but one new term under the option to renew would put the date of termination of the lease beyond the agreed depreciated life of the building. It would be idle to say that such a contingency would be given no effect by a purchaser of the lessor's interest in the property. It should not be ignored in estimating the depreciated value of the buildings at the termination of the lease for purposes of taxation. As it was not given effect by the Commissioner in determining the deficiency which was sustained by the Board, it is apparent that the deficiency was incorrect in amount. The petitioner has proved facts from which so much can be determined and that is enough to entitle it to relief even though it has not proved either that there was no deficiency or the correct deficiency. Helvering v. Taylor, 293 U. S. 507, 55 S. Ct. 287, 79

L. Ed. ——. Under the circumstances I think the cause should be remanded for the purpose of determining whether there is any deficiency and, if so, its amount. However, since my Brothers do not agree that the regulation is valid no basis for redetermining the deficiency survives.

Order reversed; deficiency expunged.

L. HAND, Circuit Judge, concurring in separate opinion.

SWAN, Circuit Judge, concurs with HAND, Circuit Judge.

L. HAND, Circuit Judge.

We agree with Judge CHASE'S statement of facts; but as to the result we do not. Miller v. Gearin (C. C. A.) 258 F. 225, is not against our view. The Commissioner, following his regulations at the time, had assessed as income against a lessor the value of buildings erected by the lessee, as of the date when the term ended. The court held that this was not correct. Without committing itself to the doctrine that the lessor was taxable when the buildings were erected, it did hold that "assuming the building was income derived from the use of the property," it was not derived when the reversion fell in. It is a far cry to say that it is income at any time before sale. After denial of certiorari, 250 U. S. 667, 40 S. Ct. 13, 64 L. Ed. 1197, the Commissioner reframed his regulations and accepted the date of erection. That was in 1919, and Congress has several times since re-enacted the income tax statute without change, so that the conventional argument would apply. However that may be, this is not merely a question of the meaning of a statute, but of what can normally be taxed under the Sixteenth Amendment, and the re-enactment of the income tax law has little or no effect upon that. It was possible at the outset to say that capital gains and losses were not income at all; they are not popularly so regarded, and in Great Britain for example they are not taxed as such. In this country we have decided otherwise, and that step taken, we might have gone further and said that any increase in value was income; that would have been awkward in administration—it would involve an annual appraisal of all the taxpayer's goods —but it would have been rational. The Supreme Court held otherwise; the gain must be "realized." Eisner v. Macomber,

252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570; North American Oil Consol. v. Burnet, 286 U. S. 417, 52 S. Ct. 613, 76 L. Ed. 1197; Lucas v. North Texas Co., 281 U. S. 11; 50 S. Ct. 184, 74 L. Ed. 668. Just when it in fact is "realized" is not always easy to say. We concede that in a situation like that at bar a lessor need not receive money to be taxable; if improvements to land be portable—detachable machinery for example, which he can take off and sell as separate chattels—he receives income either when the lease is made, or when the term ends; for present purposes we need not say which. On the other hand, if the lease requires the lessee to drain the land, or set out shade trees, or pave it, or grade it, or build a golf course, or a race track on it, we can see no difference between the resulting increase in its value and that arising from the growth of the surrounding neighborhood, or the increase in value of a share of stock. The question as we view it is whether the value received is embodied in something separately disposable, or whether it is so merged in the land as to become financially a part of it, something which, though it increases its value, has no value of its own when torn away. It does not help towards the solution of this that the lessee may be able to deduct the cost of the building from his own income. Expense to him has no relation to the lessor's income.

Therefore in our judgment if a building when removed be worthless, save as bricks, iron, and mortar, it becomes income only when the land is sold, and then only in so far as it increases the "amount realized" at that time—the minuend in the equation of gain. This answers every fiscal necessity far more directly and simply than any other formula. While the term lasts, the lessor gets nothing which benefits him but the rent; when it ends, he gets land for which he can get a higher rent—that is, if the building is neither outworn, nor outmoded. On all rents he must pay a tax. If he sells at any time, pending the term or after it ends, the building will increase his gains; and his taxes in proportion. But a power to sell is not the same as a sale. It might have been thought to be, but it was not; at least it has not been in circumstances precisely alike in all relevant respects. The doctrine may have its exceptions, but if so, we can see no reason to import one here. The alternative requires a factitious scaf-

folding; the value of the reversion is appraised by adding the present value of the building and depreciating it to the end of the term; the balance is then distributed ratably over its whole span. In the case at bar another factor must be included, the possibility of the lessee's renewal. All this is not necessary to the collection of taxes upon such income as is actually received in the ordinary sense; nor does it accord with the principle which for most purposes anyway is to be treated as constitutional dogma. There may well be other considerations proper when the lessee's deductions are concerned, but as to the lessor, he ought not to be taxed till he sells.

Order reversed; deficiency expunged.