LOUISE C. SLACK AND W. B. MERWIN, EXECUTORS OF THE ESTATE OF A. B. SLACK, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 72404, 78525. Promulgated January 19, 1937.

*Claude I. Parker, Esq., Bayley Kohlmeier, Esq.*, and *L. A. Luce, Esq.*, for the petitioners.

*John H. Pigg, Esq.*, and *Arthur Clark, Esq.*, for the respondent.

OPINION.

TURNER: Our first question is whether or not the respondent erred in disallowing the net loss deduction claimed by the decedent on his returns for 1930 and 1931 as the result of the loss sustained by him in 1929 from the sale of real estate to Sears, Roebuck & Co. The deduction was disallowed by the respondent, first, on the ground that the loss was not sustained in a trade or business regularly carried on by the decedent and, second, on the ground that it represented a capital loss; which, under the terms of the statute, is deductible in computing a net loss only to the extent of capital gains. It is the contention of the petitioners that the decedent, during the year 1929, was regularly engaged in the business of buying, selling, and leasing real estate, and the loss, having been sustained in the sale of real estate, was attributable to the operation of that trade or business and was a net loss within the meaning of section 117 [1] of the Revenue Act of 1928.

A capital loss, by the terms of the statute, is a loss resulting from the sale or exchange of capital assets, and a capital asset is defined

---

[1] SEC. 117. NET LOSSES.

(a) *Definition of "net loss."*—As used in this section the term "net loss" means the excess of the deductions allowed by this title over the gross income, with the following exceptions and limitations:

(1) NON-BUSINESS DEDUCTIONS.—Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall be allowed only to the extent of the amount of the gross income not derived from such trade or business;

(2) CAPITAL LOSSES.—In the case of a taxpayer other than a corporation, deductions for capital losses otherwise allowed by law shall be allowed only to the extent of the capital gains;

\* \* \* \* \* \* \*

(b) *Net loss as a deduction.*—If, for any taxable year, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount thereof shall be allowed as a deduction in computing the net income of the taxpayer for the succeeding taxable year (hereinafter in this section called "second year"), and if such net loss is in excess of such net income (computed without such deduction), the amount of such excess shall be allowed as a deduction in computing the net income for the next succeeding taxable year (hereinafter in this section called "third year") ; the deduction in all cases to be made under regulations prescribed by the Commissioner with the approval of the Secretary.

by section 101 (c) (8) of the Revenue Act of 1928 as "property held by the taxpayer for more than two years (whether or not con-nected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business."

In our opinion the record definitely and clearly shows that the property sold to Sears, Roebuck & Co. was a capital asset within the meaning of section 101 (c) (8) mentioned above. There is no question that the property had been held for more than two years. It was not stock in trade; neither was it property held by the tax-payer primarily for sale in the course of his trade or business. The taxpayer was a man of considerable means. His money was in-vested largely in rent-producing real estate and substantially all his income was derived from the rents. We have found as a fact that he held the said real estate primarily for rental purposes and not for sale. It is apparent from the testimony that the sales of real estate were prompted by the fact that the parcels sold were no longer profitable from a rental standpoint, rather than by the thought of making a profit from such sales. As a matter of fact, the decedent sustained losses on all of his real estate sales, excepting possibly two sales where in each instance a portion of a parcel was sold. Some argument is made to the effect that by the terms of the lease agreement with the Pasadena Furniture Co., which gave the lessee the right to purchase the property under certain circumstances, the lessor thereafter held the property primarily for sale. The terms of the lease and the activities of the decedent negative this conten-tion. There is nothing in the lease or in the record which indicates that the decedent desired to sell the property so long as it was profit-able from a rental standpoint. On the other hand, the record does indicate that the property was bought for rental purposes and the whole scheme and plan of the transaction with the Pasadena Furni-ture Co. was to arrange for rentals to the decedent over a long period of years.

It is also contended that the decedent placed the property in the hands of a real estate agent for sale as early as 1927, and that this act on his part changed the situation so that the property was thereafter held by him primarily for sale. As a matter of fact the real estate agent was unable to say, when questioned on cross-exami-nation, that the property had been listed for a period of more than eight or nine months prior to the sale to Sears, Roebuck & Co., which occurred in October 1929, and, furthermore, the property was listed with him for lease or sale. It is not enough, however, under

the statute, that property be held primarily for sale. It must be held for sale in the course of the taxpayer's trade or business. *Phipps* v. *Commissioner*, 54 Fed. (2d) 469. In the instant case· it may be said that the decedent was engaged in the business of owning and renting real estate, and when a piece of property was no longer valuable for that purpose it was disposed of, but the facts do not show that the decedent was engaged in buying and selling real estate as a business and we have found as a fact that he was not so engaged. The property sold to Sears, Roebuck & Co. was a capital asset and the loss sustained therefrom was a capital loss, and, since the decedent realized no capital gains in the year of the sale, the loss in question may not be included in computing his net loss for 1929.

The petitioner relies on *S. Rose Lloyd*, 32 B. T. A. 887. In that case, however, the Board found as a fact that the petitioner was regularly engaged in the business of buying and selling real estate and that the property on which the loss was sustained was held primarily for sale in the course of that trade or business. The record in this case, as we have pointed out, definitely shows that the property in question was not held primarily for sale. On the first issue, the respondent is sustained.

The second issue requires a determination of the question as to whether or not the decedent realized taxable gain in 1931 upon default and forfeiture of the lease by J. W. Dickinson. As the result of the forfeiture the decedent came into possession of a building, erected on the premises by Dickinson, which at the time of forfeiture had a depreciated value of $36,000. That amount was reported in income on the decedent's return for 1931. It is alleged in the petition that the inclusion of that sum in income for 1931 was error. Among the cases cited by the petitioners in support of that allegation is *Miller* v. *Gearin*, 258 Fed. 225; certiorari denied, 250 U. S. 667. In that case, as in this, the lessee erected a building on leased premises. Upon default the lessor repossessed the property and the respondent included in the lessor's income in the year of repossession an amount equal to the fair market value of the building at the time it was repossessed. The court held that the lessor in that year acquired nothing except possession of that which for many years had been her own property. It was suggested that, if the building might be termed income from the use of the property, it must have been income in the year in which it was completed and enhanced the value of the real estate of which it became a part.

The respondent does not take issue with the rule laid down in *Miller* v. *Gearin*, *supra*, but, to the contrary, claims that that case and article 63 of Regulations 74, as amended by T. D. 4282, C. B. VIII-2, p. 82, are controlling. He argues that under the provisions of T. D.

4282 the petitioners are estopped from denying that the decedent realized gain in the amount of $36,000 in 1931 by reason of the cancellation of the lease. T. D. 4282, which includes the rule laid down in *Miller* v. *Gearin, supra,* as an alternative method of reporting income in such cases, reads in part as follows:

Article 63 of Regulations 74 is hereby amended to read as follows:

ART. 63. *Improvements by lessees.*—When buildings are erected or improvements made by a lessee in pursuance of an agreement with the lessor, and such buildings or improvements are not subject to removal by the lessee, the lessor may at his option report the income therefrom upon either of the following bases:

(a) The lessor may report as income at the time when such buildings or improvements are completed the fair market value of such buildings or improvements subject to the lease.

(b) The lessor may spread over the life of the lease the estimated depreciated value of such buildings or improvements at the expiration of the lease and report as income for each year of the lease an aliquot part thereof.

Except in cases where the lessor has exercised the option to report income upon basis (b), if the lease is terminated so that the lessor comes into possession or control of the property prior to the time originally fixed for the expiration of the lease, the lessor derives no income by reason thereof, and, just as when the lessor comes into possession or control of the property upon the expiration of the lease, the basis for determining gain or loss to the lessor from the subsequent sale or other disposition of the buildings or improvements and for depreciation in respect of such property is the amount previously reported as income by the lessor because of the erection of the buildings or improvements * * *.

\*          \*          \*          \*          \*          \*          \*

In all cases where the lessor has exercised the option to report income upon basis (b), if the lease is terminated so that the lessor comes into possession or control of the property prior to the time originally fixed for the expiration of the lease, the lessor derives additional income for the year in which the lease is so terminated to the extent that the value of such buildings or improvements when he becomes entitled to such possession exceeds the amount already reported as income on account of the erection of such buildings or improvements. * * *

In applying article 63 above, the respondent contends that the decedent, under paragraph (a), had the option of reporting income in respect of the building in the year in which it was completed, or under paragraph (b) of prorating the income in respect thereto over the life of the lease, and, since he did neither, it must be deemed that he exercised the option to prorate the income over the life of the lease and, further, since the decedent did not report income in accordance with that election, the petitioners are now estopped from claiming that he realized no income in the year the lease was terminated. The fallacy in this contention is at once apparent on examination of the facts. The lease was for a 99-year period and the building obviously had a probable life of not more than 40, or at the

most, 50 years. According to the terms of the above regulation the decedent should have reported as income, in the year in which the building was completed, an amount equal to the fair market value of the building, subject to the lease, or should have reported in each year during the time the lease was in force an aliquot part of the estimated depreciated value at the expiration of the lease. Certainly in the absence of proof to the contrary no one would be justified in holding that a building such as we have here would, subject to a 99-year lease, have any fair market value, and it would be equally startling to say that it would have any depreciated value at the expiration of the lease. It is at once apparent from these facts that there is as much ground for saying that the decedent exercised the option under paragraph (a) of the above regulation as there is for saying that he exercised the option under paragraph (b), and if the decedent lessor did elect the option under paragraph (a), the regulation itself states that he derived no income by reason of the termination of the lease prior to the time originally fixed for its expiration. There is nothing whatever in the record to show that the decedent failed in any year prior to the taxable year to report any and all income in respect of the building in question, as provided by the regulation the respondent relies on. There is no showing of misrepresentation on the part of the decedent and, on the facts before us, the respondent could not possibly have been misled by any affirmitive act of the decedent. Since the doctrine of estoppel was invoked by the respondent, the burden was on him to present proof of facts sufficient to justify its application. *Helvering* v. *Brooklyn City Railroad Co.*, 72 Fed. (2d) 275. He has presented no such proof and the claim of estoppel is denied.

The claim of the petitioners that the decedent realized no taxable gain in 1931 by reason of the forfeiture of the Dickinson lease is supported by *Miller* v. *Gearin, supra*, the soundness of which has been accepted in numerous cases. *Shelby D. Scott*, 9 B. T. A. 1219; *Joseph L. B. Alexander*, 13 B. T. A. 1169; *W. H. Martin*, 24 B. T. A. 813; *United States* v. *Boston & Providence R. R. Corporation*, 37 Fed. (2d) 670; *Cryan* v. *Wardell*, 263 Fed. 248; *Hewitt Realty Co.* v. *Commissioner* (majority and concurring opinions), 76 Fed. (2d) 880. Ownership of the building vested in the decedent when it was erected on his property and, in the taxable year, he merely came into possession of that which he already owned. "Possession so acquired was not income." *Miller* v. *Gearin, supra*. Although not cited by the respondent, *Gilbert Butler*, 4 B. T. A. 756, gives some support to the proposition that the decedent realized gain in 1931 to the extent of the fair market value of the building at the time the lease was forfeited. That case involved the treatment for income tax purposes of improvements consisting of shafts, tunnels, and the like, made by a

lessee on mineral properties. The Board said: "Commonly, permanent improvements placed upon leased property by the lessee result immediately in income to the lessor. See *Miller* v. *Gearin* (C. C. A.), 258 Fed. 225; *Cryan* v. *Wardell*, *supra*. However, if the life of the improvement is less or only equal to the term of the lease, the Bureau of Internal Revenue has always conceded that no income resulted until the lessor acquired possession and beneficial use thereof. This we believe to be the correct rule." No effort was made in that case to show how the acquisition of possession of property already owned constituted the realization of gain in the one case and not in the other. It is true that in *Miller* v. *Gearin*, the lease was for a term of 23 years, while in *Gilbert Butler* the term was for the life of the mine, but in neither case did the lessor come into possession of the property by the running of the term fixed in the lease instrument. In each case possession of the property with the improvements thereon was obtained by forfeiture of the lease prior to the running of the term. It was the acquiring of possession of improvements by forfeiture that the court held was not income. We are now of the opinion that *Gilbert Butler*, *supra*, can not be reconciled with the decision of the court in *Miller* v. *Gearin*, *supra*, and on that point our opinion therein will not be followed. The second issue is determined for the petitioners.

The question involved in the third issue is whether or not the decedent properly deducted as an ordinary and necessary expense the item of $1,800 paid during the year 1931 to his attorneys for legal services rendered in connection with an appeal to this Board from the determination of a deficiency in income tax against him for the year 1923. As we have pointed out, the decedent derived substantially all of his income from real estate rentals. In our opinion his activities in connection with the management of his rental properties constituted the carrying on of a trade or business and the income involved in the proceeding before the Board was derived from the sale of a portion of a parcel of real estate bought for use in connection with that trade or business. Under authority of the decision of the Supreme Court of the United States in *Kornhauser* v. *United States*, 276 U. S. 145, it is our opinion that the fee in question was an ordinary and necessary expense, incurred and paid by the decedent in carrying on a trade or business. The petitioners are sustained on this issue. See also *Caroline T. Kissell*, 15 B. T. A. 1270. Cf. *Alice G. Kales*, 34 B. T. A. 1046.

The fourth and final issue raised the question as to whether or not the respondent erred in failing to allocate one-half of the decedent's total taxable income for the year 1930 to the decedent's wife. In support of the allegation of error, it is alleged that the property from which the income in question was derived was community property,

such property having been purchased with community funds realized by the petitioner and his wife while residents of the State of Texas. No proof was presented in support of this allegation and no argument has been made by the petitioners to sustain the position taken in the petition. The issue has apparently been abandoned and is decided for the respondent by reason of failure on the part of petitioners to make any showing to sustain it.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

HILL dissents.

---

ARUNDELL, concurring: I concur in the result reached on the second point but not in the reasoning by which it is reached. The substance of the holding on this point is that the petitioner is not to be taxed in the year 1931 by reason of his acquiring possession in that year of premises on which his lessee had erected a building. This is the same conclusion arrived at in the *Hewitt Realty* case, in which the reasoning of the court was that improvements to leased premises which become a part of the realty do not result in income to the lessor until he sells the realty. At the time of sale, and not before, the enhancement in value, if any, resulting from the improvements is realized by the lessor. That seems to me to be the sound rule, and, applying it here, the conclusion must be that the surrender of the premises by the lessee in 1931 did not produce income to the lessor in that year.

STERNHAGEN, TYSON, and HARRON agree with the above.