## HILGENBERG v. UNITED STATES.

District Court, D. Maryland.
Nov. 29, 1937.

Venable, Baetjer & Howard and J. Crossan Cooper Jr., all of Baltimore, Md., for plaintiff.

James P. Garland, Sp. Asst. to Atty. Gen., and G. Randolph Aiken, Asst. U. S. Atty., of Baltimore, Md.

WILLIAM C. COLEMAN, District Judge.

This is a suit brought by the plaintiff against the United States under section 24, subdivision 20, of the Judicial Code (28 U.S.C.A. § 41 (20), to recover, because claimed to have been illegally assessed under the Revenue Act of 1932 (chapter 209, 47 Stat. 169), the sum of $824.66 with interest, which plaintiff paid as income taxes for the calendar year 1933. Pursuant to the above section of the Judicial Code, the case was heard by the court without a jury.

Broadly stated, the primary question involved is this: When a lessee of property makes improvements, pursuant to a lease agreement, at his own expense, but which are to belong to the landlord when the lease ends, does the value of those improvements, when made, constitute income then taxable to the landlord? Without stating at length the facts in the present case, suffice it to say that in 1931 the plaintiff leased to the Oriole Cafeterias, Incorporated, for a period of 20 years, without right of renewal, under a written agreement, certain real estate in Baltimore City which he owned in fee simple. The lease permitted the tenant to erect improve-

ments, entirely at its own expense, but did not require the tenant to do so. In 1933, extensive improvements were completed by the tenant, costing approximately $92,-000. Two provisions of the lease have a very important bearing upon the issue. Those provisions are contained in articles 5 and 6 of the lease, which, without quoting the exact phraseology, are to the effect (1), that any alterations or improvements shall be done at the lessee's own expense, to suit the lessee's business, provided no structural changes shall be made without the approval first had of the lessor, all such alterations to become the property of the lessor at the termination of the lease; and (2) the lessee is given the right to use the property for any purpose that he may see fit, a cafeteria being in immediate contemplation, with the exception that the leased premises are not to be used as a hotel, apartment house, residence, or for any purpose which might, by any present or future laws of the state of Maryland, accord to the lessee the right to redeem the rent and acquire the leased property.

Under section 22(a) of the Revenue Act of 1932, 47 Stat. 178 (26 U.S.C.A. § 22 and note), and article 63 of Treasury Regulation 77, issued relative thereto, the Commissioner of Internal Revenue assessed a deficiency against the plaintiff, based in part upon the inclusion, in gross income, of the sum of $1,844.61, representing one-eighteenth of the value of these improvements depreciated at the rate of 1½ per cent. per annum, to the end of the lease.

The pertinent part of section 22(a) of the Revenue Act of 1932 is as follows: "'Gross income' includes gains, profits, and income derived from * * * rent * * * or gains or profits and income derived from any source whatever." The provisions of article 63 of Treasury Regulation 77 are as follows: "When buildings are erected or improvements made by lessee in pursuance of an agreement with the lessor, and such buildings or improvements are not subject to removal by the lessee, the lessor may at its option report the income therefrom upon either of the following bases: (a) The lessor may report as income at the time when such buildings or improvements are completed the fair market value of such buildings or improvements, subject to the lease. (b) The lessor may spread over the life of the lease the admitted depreciated value of such buildings or improvements at the expiration of the lease, and report as income for each year of the lease an aliquot part thereof."

It is provision (b) that has been applied to the present case.

■■ The court believes that there is no sound basis for so treating the improvements here under consideration as "income" of the landlord, the plaintiff, within the contemplation of the Sixteenth Amendment to the Federal Constitution, or of the provisions of the taxing statute here involved. The Commissioner of Internal Revenue appears to have fallen into error in his regulation interpreting the definition of "income." In Eisner v. Macomber, 252 U.S. 189, at page 207, 40 S. Ct. 189, 193, 64 L.Ed. 521, 9 A.L.R. 1570, the Supreme Court, in 1919, in holding that, by virtue of the Sixteenth Amendment, Congress could not tax, as income of a stockholder and without apportionment, a stock dividend, thus defined income under that Amendment: "After examining dictionaries in common use (Bouv. L.D.; Standard Dict.; Webster's Internat. Dict.; Century Dict.), we find little to add to the succinct definition adopted in two cases arising under the Corporation Tax Act of 1909 (Stratton's Independence v. Howbert, 231 U.S. 399, 415, 34 S.Ct. 136, 58 L.Ed. 285; Doyle v. Mitchell Bros. Co., 247 U.S. 179, 185, 38 S.Ct. 467, 62 L.Ed. 1054), 'Income may be defined as the gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets, to which it was applied in the Doyle Case, 247 U.S. 179, at pages 183, 185, 38 S.Ct. 467, 62 L.Ed. 1054.

"Brief as it is, it indicates the characteristic and distinguishing attribute of income essential for a correct solution of the present controversy. The government, although basing its argument upon the definition as quoted, placed chief emphasis upon the word 'gain,' which was extended to include a variety of meanings; while the significance of the next three words was either overlooked or misconceived. 'Derived—from—capital'; 'the gain—derived—from—capital,' etc. Here we have the essential matter: not a gain accruing to capital; not a growth or increment of value in the investment; but a gain, a profit, something of exchangeable value, proceeding from the property,

severed from the capital, however invested or employed, and coming in, being 'derived,'—that is, received or drawn by the recipient (the taxpayer) for his separate use, benefit and disposal—that is income derived from property. Nothing else answers the description.

"The same fundamental conception is clearly set forth in the Sixteenth Amendment—'incomes, from whatever source derived'—the essential thought being expressed with a conciseness and lucidity entirely in harmony with the form and style of the Constitution."

This court is not aware that that definition has ever been departed from by the Supreme Court. See United States v. Phellis, 257 U.S. 156, 42 S.Ct. 63, 66 L. Ed. 180; Rockefeller v. United States, 257 U.S. 176, 42 S.Ct. 68, 66 L.Ed. 186; Cullinan v. Walker, 262 U.S. 134, 43 S.Ct. 495, 67 L.Ed. 906; Weiss v. Stearn, 265 U.S. 242, 44 S.Ct. 490, 68 L.Ed. 1001, 33 A.L.R. 520; Marr v. United States, 268 U.S. 536, 45 S.Ct. 575, 69 L.Ed. 1079; Edwards v. Cuba R. R. Co., 268 U.S. 628, 45 S.Ct. 614, 69 L.Ed. 1124. Applying the definition to the present case, we are at a loss to see how, by any sound argument, the value of the improvements involved in the present case can be held to be income taxable to the landlord.

It has been urged upon the court by the plaintiff that these improvements, as a matter of fact, do not even fall within the regulation upon which the government relies, and which has just been quoted, because that regulation aims to tax, as income, improvements of this nature only when made by a lessee "in pursuance of an agreement with the lessor," and also, only when "not subject to removal by the lessee." It is clear from those portions of the lease which have already been referred to, that, at any time, the tenant had a right to remove any part of the improvements that he made, provided only such did not affect the structural plan of the building, in which case, changes could only be made with the approval first had of the landlord. Thus the tenant could virtually make over, if and when he saw fit, at any time during the term of the lease, the entire interior and, indeed, could make very substantial alterations to the exterior of the building, without violating the lease. If he did so the landlord would have no valid claim under the lease to any of the improvements, thus discarded to make way for other improvements, save lighting fixtures, as to which there is a special exception, but only to such as remained in the premises "at the termination of the lease"; and this is true regardless of whether any part so removed be fixtures or movable property in legal contemplation. Such is a proper interpretation of the provision in the lease that "All such alterations, changes and additions become the property of the lessor at the termination of this lease." So there is considerable weight in plaintiff's argument that for these reasons the present case does not fall within the treasury regulation.

The additional argument that the regulation is not applicable because there is no actual agreement or contract between the landlord and the tenant, in the present case, that the latter shall make any improvements, but merely that he may make them, is not convincing, because the regulation employs the words "in pursuance of an agreement with the lessor," and certainly there is an agreement here, to wit, the lease, which is sufficient to satisfy the requirement.

Although there is much substance to the first of these two arguments advanced by the plaintiff, I prefer to rest the case squarely upon the answer to the question whether it is permissible, under the Sixteenth Amendment to tax, as income, improvements which have been made under the conditions existing in the present case. The answer must be in the negative.

The Circuit Court of Appeals for the Second Circuit, in the case of Hewitt Realty Co. v. Commissioner of Internal Revenue, 76 F.2d 880, 98 A.L.R. 1201, held, upon a state of facts similar in their material features to those in the present case, except that, unlike the present case, there was provision for renewal of the lease under certain stipulated conditions, that the value of the improvements was not taxable as income, thus reversing the ruling of the Board of Tax Appeals and ordering the alleged deficiency in tax expunged. Judge Chase dissented, but felt that the case should have been remanded for the purpose of determining whether there was, in fact, any deficiency. In his separate opinion he explained that since the lessor was entitled to spread over the life of the lease the estimated depreciated value of the improvements at its termination, and since the life of the lease could be extended by the lessee beyond the depreciated life of

the improvements, he felt that the depreciated value at the termination of the lease could not be correctly determined, in order to apply the treasury regulation, unless consideration be given, which had not been done, to the lessee's right to renew without any increase in the rent based upon any added value to the property due to the erection of the improvements, pointing out (76 F.2d 880, at page 883), that "the creation of but one new term under the option to renew would put the date of termination of the lease beyond the agreed depreciated life of the building." In the majority opinion by Circuit Judge Learned Hand, the court said, 76 F.2d 880, at pages 884, 885: "The question as we view it is whether the value received is embodied in something separately disposable, or whether it is so merged in the land as to become financially a part of it, something which, though it increases its value, has no value of its own when torn away. It does not help towards the solution of this that the lessee may be able to deduct the cost of the building from his own income. Expense to him has no relation to the lessor's income. * * *

"While the term lasts, the lessor gets nothing which benefits him but the rent; when it ends, he gets land for which he can get a higher rent—that is, if the building is neither outworn, nor outmoded. On all rents he must pay a tax. If he sells at any time, pending the term or after it ends, the building will increase his gains; and his taxes in proportion. But a power to sell is not the same as a sale. * * * There may well be other considerations proper when the lessee's deductions are concerned, but as to the lessor, he ought not to be taxed till he sells."

There was no petition for writ of certiorari by the government in this case, because, of the aspect of the case, as disclosed by Judge Chase's opinion.

It appears that the Commissioner and the Board of Tax Appeals have been primarily influenced by two earlier cases, namely, Cryan v. Wardell, 263 F. 248, 249, and Miller v. Gearin, 258 F. 225, the former a decision by the District Court for the Northern District of California (never appealed), and the latter an opinion of the Circuit Court of Appeals for the Ninth Circuit. In the Miller Case, the question was whether the value of the improvements which the lessee was obligated to make, and which were completed in 1907,

was to be treated as income taxable to the landlord for the year 1916, under a 23-year lease, the same having been forfeited in that year and the lessor having then resumed possession. The court held that they were not so taxable, because under the lease the title to them vested in the lessor immediately upon their completion. Thus a ruling to the effect that the lessor was taxable when the improvements were completed was not necessary under the facts in the case. However, the court did say (page 226): "The lessor acquired nothing in 1916 save the possession of that which for many years had been her own. The possession so acquired was not income. It was not a gain, but was a loss. Assuming that the building was income derived from the use of the property, we think it clear that the time when it was 'derived' was the time when the completed building was added to the real estate and enhanced its value. At that time it represented a prepayment to the lessor of a portion of the rental, distributable over a period of 23 years. The lease provided that the ownership of all buildings or improvements put upon the premises was to vest in the lessor immediately upon the construction of the same, subject to the provisions of the lease."

In the later case, Cryan v. Wardell, a similar question was presented. It arose under a California statute. The building was erected by a lessee under a 26-year lease, prohibiting removal of the building. The building was completed in 1910. In 1916 the tenant being in default, the lease was then canceled by mutual agreement and the landlord resumed possession. Under a treasury ruling in effect at the time (Regulation 33, par. 50), the government sought to tax the value of the building as income of the landlord for the year 1916. That ruling provided that improvements made to property under such a lease was gain or profit to the lessor at the end of the lease term, and was to be accounted for as income at that time. However, the court held that, since the improvements became the property of the lessor when they were made in 1910, their value was not taxable to the landlord as income for the year 1916. Although not necessary to the decision, the court added (263 F. 248, at page 249): "It results that whatever accession of value resulted to plaintiff's property from the erection of the building in question accrued and became vest-

ed in her in 1910, and not upon the termination of the lease."

The effect of these decisions upon the attitude of the Treasury Department, as expressed in its regulations, may best be understood by a very brief review of the evolution of the pertinent regulations. Until the year 1919, the Commissioner treated improvements, that became the property of the lessor when made by the lessee, as income to the lessor to the extent of their value at the termination of the lease. See Treasury Regulation 33, article 4, approved October 3, 1917; Volume 19, Treasury Decisions, Internal Revenue Laws, pp. 25, 26; also, Treasury Regulation 45, article 48, approved April 17, 1919. In 1919 Miller v. Gearin, supra, was decided, a decision which, as we have seen, was directly contrary to the position previously assumed by the Commissioner. Upon a petition for writ of certiorari to the Supreme Court in this case being denied (250 U.S. 667, 40 S.Ct. 13, 64 L.Ed. 1197), the treasury regulation was amended to conform to the decision therein. The alternative method of returning income by spreading it over the life of the lease, as has been done in the present case, pursuant to subdivision B, Regulation 74, article 63, was first permitted in Regulation 62, article 48, approved February 15, 1922, promulgated under the revenue act of that year. Thereafter, up to the present time, one or the other method of returning income, as set forth in Regulation 74, article 63, was required. Congress has at various times amended the income tax laws without disapproving such requirement. As a result, the Board of Tax Appeals has rendered numerous decisions upholding the Commissioner's interpretation. See Gilbert Butler's Appeal, 4 B.T.A. 756; Everett Crosby's Appeal, 4 B.T.A. 1147; Henry I. Brown's Appeal, 4 B.T.A. 1129; Shelby D. Scott v. Com'r, 9 B.T.A. 1219; Joseph L. B. Alexander v. Com'r, 13 B.T.A. 1169; W. H. Martin v. Com'r, 24 B.T.A. 813; Louise C. Slack v. Com'r, 35 B.T.A. 271; Emma C. Morphy v. Com'r, 35 B.T.A. 289; Julia Willms Sloan v. Com'r, 36 B.T.A. 370, 376. It appears that the decision in none of these cases was appealed. Also, these opinions of the Board have been by no means unanimous, although a majority of the Board has consistently adhered to the same position, and in at least two of its more recent cases, the two last referred to supra, has considered the Hewitt Realty Company Case, supra, but has refused to depart from its original position. In the Morphy Case, the Board said (35 B.T.A. 289, at page 291): "It is true the Circuit Court of Appeals for the Second Circuit in Hewitt Realty Company v. Commissioner, 76 F.2d 880, [98 A.L.R. 1201] (1935) is contra. That opinion has had the respectful consideration of this Board. It offers what may seem to be a persuasively practical answer to a difficult problem. However, no other similar authority has come to our attention. And, the court, even in its decision of that case, was not unanimous. See dissenting opinion of Chase, Judge. Therefore, we adhere to our position and sustain the validity of the contested regulations."

With like determination and brevity, in the latest case, Julia Willms Sloan v. Com'r, supra, the Board said (36 B.T.A. 370, at page 376): "The petitioner relies on Hewitt Realty Co. v. Commissioner, 76 F.2d 880, [98 A.L.R. 1201] in which the Circuit Court of Appeals for the Second Circuit, reversing this Board, 29 B.T.A. 1205, rejected the Commissioner's method of determining realization of income, as constitutionally unsound.

"In the recent case of Emma C. Morphy v. Com'r, supra, we gave careful consideration to the decision in Hewitt Realty Co. v. Commissioner, supra, and, relying upon the cases of Miller v. Gearin (C.C.A.) 258 F. 225, and Cryan v. Wardell (D.C.) 263 F. 248, came to the conclusion that, since no other court had adopted the theory of the Hewitt Realty Co. Case, we should adhere to our former opinion and again sustain the validity of the contested regulations. See also United States v. Boston & Providence Railroad Corporation (C.C.A.) 37 F.2d 670. Pursuant to that conclusion we sustain the Commissioner here."

The case last referred to by the Board, namely, United States v. Boston & Providence Railroad Corporation, decided by the Circuit Court of Appeals for the First Circuit, antedated the Hewitt Realty Company decision, and involved other questions, but the court approved Miller v. Gearin and Cryan v. Wardell, supra. To like effect is Crane v. Commissioner of Internal Revenue, 68 F.2d 640, another decision of the Circuit Court of Appeals for the First Circuit, but also antedating the Hewitt Realty Company Case. See, also,

Kentucky Block Coal Co. v. Lucas (D.C.) 4 F.Supp. 266, which is a square holding in favor of the government's contention, but is again a decision antedating the Hewitt Realty Company Case, and the opinion in the Kentucky Case is devoid of any analysis of the authorities. Also, this case appears never to have been appealed.

The theory underlying the present attitude of the Commissioner and all of the decisions of the Board of Tax Appeals appears to be founded on the misconception that, since the value of the improvements is not income at the time the lease is terminated, it must of necessity be income when they are completed. This, of course, is a non, sequitur, because it need not be income at either time. The reasoning of necessity is based upon the theory that since, upon the completion of improvements by the lessee, the rights of the lessor under the lease are such that the new construction at that time becomes his permanent property subject to the lease, any increase in value then acquired which will not be exhausted during the life of the lease is additional rent paid at that time, and taxable to the lessor in that year as income. In so far as the decision in the Miller Case, or in any other case referred to, is to be considered as a holding to this effect, we must disagree with such holding, because we believe that the conclusion, and reasoning upon which such conclusion is based, in the Hewitt Realty Company Case, supra, are more sound. The fact that in that case the lessee was not, nor was he in the present case, required to make the improvements as he was in the Miller Case, is not a distinction of any legal significance.

Finally, we are, of course, not unmindful of the further point, which has been stressed by counsel for the government, that the present regulation, long in effect and never disapproved by Congress, although Congress has several times amended the pertinent provisions of the income tax laws, should, for these reasons, now be treated as an administrative interpretation of the existing law. See Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457; McCaughn v. Hershey Chocolate Co., 283 U.S. 488, 51 S.Ct. 510, 75 L.Ed. 1183. But citation of authorities is scarcely necessary to refute the proposition that what is not in fact income, within the meaning of the Sixteenth Amendment, can, nevertheless, be made income by legislative act. A fortiori, it cannot be made income by a mere regulation of an administrative department.

In the case of Manhattan General Equipment Co. v. Commissioner, 297 U.S. 129, at page 134, 56 S.Ct. 397, 400, 80 L. Ed. 528, the Supreme Court said: "The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law, for no such power can be delegated by Congress, but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity." And in the case of Koshland v. Helvering, 298 U.S. 441, at page 445, 56 S.Ct. 767, 769, 80 L.Ed. 1268, 105 A.L.R. 756, the Supreme Court said: "We give great weight to an administrative interpretation long and consistently followed, particularly when the Congress, presumably with that construction in mind, has re-enacted the statute without change. The question here, however, is not merely of our adopting the administrative construction, but whether it should be adopted if in effect it converts an income tax into a capital levy." Of course, in the present case we have the converse of that situation. But the principle must be precisely the same. If a given construction is contrary to the Constitution, it does not make any difference whether it is in favor of, or against, the taxpayer.

In view of the decision which the court reaches on the primary question, it becomes necessary to determine only one other point, that is, as to the correctness of the computation, adopted by the government with respect to the value of the property before improved under the lease, for the purpose of determining depreciation, and also the rate of depreciation. It is to be noted that this point is entirely independent of the question whether the value of the improvements is income.

On this point the court believes that, as a result of the evidence presented, the contention of the plaintiff is also the correct one, and, therefore, finds that the figures that should be employed are as follows: 71 per cent. of the original value ($37,000) as shown by the books of the plaintiff; and then a 2 per cent. annual depreciation charge placed against the resultant figure.

Judgment will be given for the plaintiff, in accordance with this opinion.