## FIFTEENTH STREET INV. CO. v. NICHOLAS, Collector of Internal Revenue.

### No. 10829.

District Court, D. Colorado.

July 7, 1938.

Benedict & Phelps, of Denver, Colo., for plaintiff.

Thomas J. Morrissey, U. S. Atty., and Ivor O. Wingren, Asst. U. S. Atty., both of Denver, Colo., for Collector of Internal Revenue.

SYMES, District Judge.

This cause was tried to the court without a jury upon an agreed stipulation of facts.

About March 1, 1929 the plaintiff leased to the Mountain States Theatre Corporation a parcel of real estate in Denver, owned by it, for 25 years at a fixed rental, and agreed to expend $262,500, including architect's fees, in the erection of a theatre building, plans and specifications for which were furnished by the lessee. The latter under the lease had the option to make additions and alterations, etc., to the building and pay the cost thereof. Accordingly the plaintiff expended its $262,500 on the building and the lessee $134,164.40 in addition. These additions were unseverable and title thereto vested in the plaintiff by operation of law. The building was completed August 31, 1930. No part of this expenditure by the lessee was in lieu of rent. When completed the building had an estimated life of 40 years and a depreciable life upon the agreed termination of the lease of 16½ years.

Thereafter the lessee defaulted in the performance of the lease, which accordingly was terminated on May 24, 1933 and exclusive possession surrendered to the plaintiff.

Plaintiff included in its income tax return for the year 1932 $2,355, which was the aliquot part for the year 1932 of the depreciated value of the additions made by plaintiff's lessee at the expiration of the lease and paid $323.81 tax thereon, the balance of which was paid March 16, 1934.

Plaintiff filed its claim for refund of these taxes on October 19, 1935, which claim was rejected by the Commissioner of Internal Revenue on July 7, 1936.

Plaintiff did not include in its income tax return for the year 1933 any part of the depreciated value of the additions and improvements made by its lessee remaining after the termination of the lease.

After examination of plaintiff's income tax return the Commissioner of Internal Revenue increased plaintiff's income for said year 1933 $49,106.66 as the depreciated value of the improvements made by its lessee and remaining after the termination of the lease and assessed plaintiff $6,752.17 as additional tax for the year 1933 by reason of the inclusion of the estimated depreciated value of such improvements, which tax plaintiff paid March 29, 1935.

Plaintiff filed its claim for refund of said last mentioned tax on October 19, 1935, which claim was rejected by the Commissioner of Internal Revenue on July 7; 1936.

The question presented is: Did the plaintiff realize any taxable gain, profit or income by reason of the erection of the permanent improvements to the property by its lessee, which inured to its benefit, either in 1932, or upon the forfeiture of the lease in 1933.

Plaintiff claims no taxable gain or profit could be realized until the improvements had been sold and that this situation was not changed by the fact that it recaptured possession previous to the expiration of the full term of the lease.

The controversy is made by the fact that the lessee had the option to, and did, expend a large sum of money in improvements. This was purely voluntary on its part, however, and did not lessen or increase the amount of rent payable. Furthermore these improvements—according to the lease—were forfeited to the landlord May 24, 1933. Nevertheless they became permanently fixed to the fee immediately upon their completion and at no time could the lessee have severed or removed them. So it can hardly be said that the plaintiff's estate was enriched solely by the forfeiture of the lease.

The Congress always had power to tax income; the 16th Amendment merely removed the limitations on the power found in Art. 1, § 2, Cl. 3 and Art. 1, § 9, Cl. 4 of the Constitution, U.S.C.A.Const. art. 1, § 2, cl. 3, and § 9, cl. 4; Amend. 16, requiring apportionment of taxes on income among the states. Peck & Co. v. Lowe, 247 U.S. 165, 38 S.Ct. 432, 62 L.Ed. 1049; Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570, and the Supreme Court soon after the adoption of the Amendment, held that income included everything that became income in the ordinary sense of the word, including dividends received in the ordinary course by a stockholder, but not until they were formally declared and paid. Lynch v. Hornby, 247 U.S. 339, 38 S.Ct. 543, 62 L.Ed. 1149.

Again (Eisner v. Macomber, 252 U.S. supra), the Court, holding that stock dividends were not income, said, page 207, 40 S.Ct. page 193:

" 'Income may be defined as the gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets * * *."

And specifically points out that it is not gain accruing to capital, not a growth or increment of value in the investment; but a gain, a profit, something of exchangeable value proceeding from the property, severed from the capital however invested or employed, and coming in, being "derived," that is, received or drawn by the recipient (the taxpayer) for his separate use, benefit and disposal.

Likewise North American Consol. Oil Co. v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197, holds that a corporation was not required to report as an income an amount which it might never receive, but only for the year in which it first became entitled to the profits and when the gain was actually received or realized.

A comparable factual situation was decided in the taxpayer's favor in Hewitt Realty Co. v. The Commissioner, 2 Cir., 76 F.2d 880, 98 A.L.R. 1201. It is pointed out that what is not in fact income cannot be made income by legislative fiat. The majority opinion states that in such a situation the lessor need not necessarily receive money to be taxable; that is, if the improvements to the land are portable—detachable machinery for example, which can be removed and sold as separate chattels. On the other hand, if the lease requires the lessee of a tract of land, for example, to spend money for paving, grading, building a golf course on it, the resulting increase in value is no different from that arising from a growth of the surrounding neighborhood.

"The question as we view it is whether the value received is embodied in something separately disposable, or whether it is so merged in the land as to become financially a part of it, something which, though it increases its value, has no value of its own when torn away." (page 884.)

See, also, Staples v. U. S., D.C., 21 F. Supp. 737; English v. Bitgood, D.C., 21 F. Supp. 641 and Hilgenberg v. U. S., D.C., 21 F.Supp. 453.

 The conclusion is inescapable, it seems to me, that this increment in the value of the plaintiff's property resulting from the voluntary expenditure of money thereon by the lessee is taxable, but only when realized; that is to say, when by some act or change in the status it is possible to determine the value thereof with reasonable accuracy. This could not be done in 1932, because the taxpayer's right and enjoyment therein was still subject to the burdens of the lease; and in 1933 who could say what

its value was, when as a result of the forfeiture, his title became absolute. What is the measuring stick, what gain was then realized?

Judgment for plaintiff in accordance with the findings.