STAPLES et al. v. UNITED STATES.

No. 19778.

District Court, E. D. Pennsylvania.

Dec. 31, 1937.

■■■■■■■■■■■

C. Russell Phillips, of Philadelphia, Pa., for plaintiffs.

Thomas J. Curtin, Asst. U. S. Atty., of Philadelphia, Pa., J. Cullen Ganey, U. S. Atty., of Bethlehem, Pa., Arthur L. Jacobs, Sp. Asst. to Atty. Gen., James W. Morris, Asst. Atty. Gen., and Andrew D. Sharpe and A. Steele Hooper, Sp. Assts. to Atty. Gen., for the United States.

MARIS, District Judge.

In this suit to recover an income tax alleged to have been erroneously paid the parties filed a stipulation of facts from which I make the following special findings of fact:

On September 25, 1933, the plaintiffs and two other individuals who owned, as tenants in common, a piece of real estate in Easton, Pa., entered into a lease of the premises for the term of five years beginning December 1, 1933. The lease contained a clause that it could be renewed for a further term of twenty-five years provided notice was given before December 1, 1937. There is no evidence that such notice was given, however.

Clauses 5, 6, and 16 of the lease were as follows:

"5. The Lessee, may, at any time during the term of this lease or any renewal thereof, tear down the front portion of the building now upon the premises, from a line approximately one hundred and fifteen feet (115') north of Northampton Street, and erect in place thereof a new building, the cost of which shall be not less than seventy-five thousand dollars ($75,000) exclusive of fixtures. * * *

"6. The Lessee agrees and covenants that it will keep the existing or any new building and premises outside and inside in good and substantial repair, and will deliver the buildings and premises at the termination of the lease in good repair and first class condition, ordinary wear and tear excepted."

"16. On or before (but not after) December 1, 1937, the Lessee may, at its option, by written notice to the Lessors, renew and extend this lease for the further term of twenty-five (25) years beginning December 1, 1938, and ending November 30, 1963, provided, that at the time of giving such notice, this lease shall be in full force and effect. Such renewal or extension shall be upon and subject to all of the terms of this lease."

The demised real estate consisted of a lot of land, 80 feet in front on Northampton street and extending 240 feet in depth. At the time the lease was executed the buildings occupying the lot were old. After the execution of the lease, the lessee demolished part of the structures on the lot and erected in place thereof new buildings at a cost of $103,833.45.

The erection of the new buildings increased the value of the demised premises. The plaintiffs' aliquot part for the year 1934 of the depreciated value of these new buildings at the expiration of the lease was $907.06. This amount was included by the plaintiffs in their income tax return for the year 1934 and income tax in the sum of $36.29 was paid thereon, $8.54 thereof on September 12, 1935, and $27.75 thereof on December 11, 1935. On May 5, 1936, plaintiffs filed a claim for the refund of the tax so paid in the sum of $36.29, which claim was rejected by the Commissioner of Internal Revenue on December 23, 1936.

Other facts which may be material are set forth in the stipulation of facts, which is incorporated herein by reference.

Discussion.

This case presents the narrow question whether the value of new buildings erected by a tenant are taxable as income to the landlord when it appears that they were built pursuant to authorization contained in the lease and that title to them was not retained by the tenant but vested at once in the landlord.

Section 22(a) of the Revenue Act of 1934, 26 U.S.C.A. § 22(a), provides that: " 'Gross income' includes gains, profits, and income derived from * * * dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever." Article 22(a)—13 of Regulations 86 adopted under the Revenue Act provides in part as follows:

"Improvements by lessees.—If buildings are erected or improvements made by a lessee and such buildings or improvements immediately become the property of the lessor, as, for instance, if they are not sub-

ject to removal by the lessee, the lessor may at his option report the income therefrom upon any one of the following bases:

"(a) The lessor may report as income for the taxable year in which such buildings or improvements are completed their fair market value at the time of their completion.

"(b) The lessor may report as income at the time when such buildings or improvements are completed the fair market value of such buildings or improvements subject to the lease.

"(c) The lessor may spread over the life of the lease the estimated depreciated value of such buildings or improvements at the expiration of the lease and report as income for each year of the lease and aliquot part thereof."

■ The provisions of paragraph (b) of this regulation were first promulgated by an amendment to article 48 of Regulations 45 on September 1, 1920. The alternative provisions of subdivision (c) were first incorporated in article 48 of Regulations 62, promulgated February 15, 1922. With no important changes, both provisions were continued in all subsequent regulations, and during the period from 1920 to 1934 the identical provisions of the Revenue Act have been re-enacted six times without change. Under these circumstances, it would appear that legislative approval of the interpretation placed by the Treasury Department upon the law through this regulation is to be presumed. National Lead Co. v. United States, 252 U.S. 140, 40 S. Ct. 237, 64 L.Ed. 496; Universal Battery Co. v. United States, 281 U.S. 580, 50 S.Ct. 422, 74 L.Ed. 1051; United States v. Farrar, 281 U.S. 624, 50 S.Ct. 425, 74 L.Ed. 1078, 68 A.L.R. 892. '

It follows that the value of buildings erected by a tenant is taxable to the landlord if it is "income" within the meaning of the Sixteenth Amendment, and therefore within the purview of the Revenue Act.

In the present case the new building was erected by the plaintiff's tenant in 1933 and the income tax, which was imposed upon them with respect thereto for the year 1934, was computed under paragraph (c) of the regulation which authorized the lessor to report as income for each year of the lease an aliquot part of the estimated depreciated value of the buildings at the expiration of the lease. This paragraph, however, is obviously for the

benefit of the taxpayer and must be held to be valid if the provisions of paragraph (b) are valid.

It follows, I think, that the sole question for consideration in this case is, as before stated, whether the value at the end of the lease of such a building erected by a lessee is income to the lessor in the year of erection within the meaning of the Sixteenth Amendment.

■ The Sixteenth Amendment authorizes the taxation without apportionment of "incomes, from whatever source derived." Income has been defined as "the gain derived from capital, from labor, or from both combined," Stratton's Independence v. Howbert, 231 U.S. 399, 34 S.Ct. 136, 140, 58 L.Ed. 285, "including profit gained through sale or conversion of capital," Doyle v. Mitchell Bros. Co., 247 U.S. 179, 38 S.Ct. 467, 62 L.Ed. 1054; Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 193, 64 L.Ed. 521, 9 A.L.R. 1570. The gain is, however, not taxable until it is realized. North American Oil Consol. v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197. Furthermore, a gain from capital must be derived from it, not merely accruing to it. Eisner v. Macomber, supra. In the case just cited Mr. Justice Pitney, after quoting the foregoing definition, said, 252 U. S. 189, at page 207, 40 S.Ct. 189, 193, 64 L. Ed. 521, 9 A.L.R. 1570:

"Brief as it is, it indicates the characteristic and distinguishing attribute of income essential for a correct solution of the present controversy. The government, although basing its argument upon the definition as quoted, placed chief emphasis upon the word 'gain,' which was extended to include a variety of meanings; while the significance of the next three words was either overlooked or misconceived. 'Derived—from—capital'; 'the gain—derived —from—capital,' etc. Here we have the essential matter: not a gain accruing to capital; not a growth or increment of value in the investment; but a gain, a profit, something of exchangeable value, proceeding from the property, severed from the capital, however invested or employed, and coming in, being 'derived'—that is, received or drawn by the recipient (the taxpayer) for his separate use, benefit and disposal— that is income derived from property. Nothing else answers the description.

"The same fundamental conception is clearly set forth in the Sixteenth Amend-

ment—'incomes, from whatever source derived'—the essential thought being expressed with a conciseness and lucidity entirely in harmony with the form and style of the Constitution."

In the light of this authoritative definition I have reached the conclusion that the value of a building erected by a tenant on his own initiative and without any obligation to do so, which by reason of its being annexed to the freehold becomes the property of the landlord, is not income of the landlord until the land is sold or otherwise disposed of. I am not passing upon the question whether the value of such a building would be taxable income to the landlord if erected by the tenant pursuant to a definite obligation to do so contained in the lease. In such a case it might well be argued that the increased value of the leased premises represented an additional rental to the landlord which was reserved by him and agreed upon when the lease was executed. Such is not this case, however.

In the present case it seems clear to me that the value of the building permanently added to the land by the tenant was at the most, in the words of Mr. Justice Pitney, but "a gain accruing to capital, * * * a growth or increment of value in the investment." It was not "something of exchangeable value, proceeding from the property, severed from the capital, * * * and coming in, being 'derived,' that is, received or drawn by the recipient (the taxpayer) for his separate use, benefit and disposal."

My view is fully supported by Hewitt Realty Co. v. Commissioner, 2 Cir., 76 F. 2d 880, 98 A.L.R. 1201, which is the only case in which this precise question has been squarely presented to a Circuit Court of Appeals for a decision. In that case Circuit Judge Hand of the Second Circuit said, page 884: "We concede that in a situation like that at bar a lessor need not receive money to be taxable; if improvements to land be portable—detachable machinery for example, which he can take off and sell as separate chattels—he receives income either when the lease is made, or when the term ends; for present purposes we need not say which. On the other hand, if the lease requires the lessee to drain the land, or set out shade trees, or pave it, or grade it, or build a golf course, or a race track on it, we can see no difference between the resulting increase in its value and that arising from the growth of the surrounding neighborhood, or the increase in value of a share of stock. The question as we view it is whether the value received is embodied in something separately disposable, or whether it is so merged in the land as to become financially a part of it, something which, though it increases its value, has no value of its own when torn away."

His conclusion was that the value of such a building becomes income to the landlord only when the land is sold and then only in so far as it increases the amount realized at that time.

The following cases are cited by the government as sustaining the contrary view: Miller v. Gearin, 9 Cir., 258 F. 225, 226; Cryan v. Wardell, D.C., 263 F. 248; United States v. Boston & Providence R. R. Corporation, 1 Cir., 37 F.2d 670; Crane v. Commissioner, 1 Cir. 68 F.2d 640; Kentucky Block Coal Co. v. Lucas, D.C., 4 F. Supp. 266; Scott v. Commissioner, 9 B.T.A. 1219; Alexander v. Commissioner, 13 B. T. A. 1169; Cataract Ice Co. v. Commissioner, 23 B. T. A. 654; Martin v. Commissioner, 24 B. T. A. 813; Slack v. Commissioner, 35 B. T. A. 271; Morphy v. Commissioner, 35 B. T. A. 289; Sloan v. Commissioner, 36 B. T. A. 370.

The first of these cases and the one principally relied upon by the others was Miller v. Gearin, decided by the Circuit Court of Appeals for the Ninth Circuit in 1919. That case, however, is not authority for the contrary view. It there appeared that the building in question had been erected by the tenant in 1907. In 1916 the lease was forfeited and the lessor resumed possession and then acquired possession of the building. The government sought to assess an income tax against the lessor in 1916, upon the value of the building in that year. This the court held it could not do because "the lessor acquired nothing in 1916 save the possession of that which for many years had been her own. The possession so acquired was not income. It was not a gain, but was a loss." The court then went on to say, "assuming that the building was income derived from the use of the property, we think it clear that the time when it was 'derived' was the time when the completed building was added to the real estate and enhanced its value." It is this last statement which the government cites as authority for its present position. It will be

seen, however, that the court was very careful not to commit itself upon this proposition. All that it did decide was that the value of a building erected by a tenant was not income to the lessor at the termination of the lease. With this proposition I am in full accord, and the case is authority for nothing more.

Cryan v. Wardell, decided by the District Court for Northern California in 1920, was a similar case. In that case the building was erected by the tenant in 1910. In 1916 the tenant defaulted, the lease was canceled, and possession surrendered to the lessor. Here also the government sought to assess an income tax against the lessor upon the value of the building for the year in which the lease terminated. The court held, however, that title to the building vested in the lessor when it was built, and that whatever accession of the value resulted to her property from the erection of the building accrued and became vested in her in 1910 and not upon the termination of the lease. Since this was prior to the enactment of the Income Tax Law, the court held that this increase in the value of her property could not be made subject to income tax. It will thus be seen that this case likewise is not opposed to the view I have taken and is in no sense authority for the position of the government that the value of such a building when erected represents income derived from real estate.

The other cases relied upon by the government and cited above rely upon the authority of Miller v. Gearin and Cryan v. Wardell. In United States v. Boston & Providence R. R. Corporation the matter is referred to purely by way of obiter dictum, and in none of them is the question discussed whether the value of a building erected by a tenant under the circumstances here disclosed is income within the meaning of the Sixteenth Amendment. In Crane v. Commissioner, Kentucky Block Coal Co. v. Lucas, and the cases decided by the Board of Tax Appeals which did involve the decision of the point now before me, it seems to me that the definition of income was extended beyond the limits laid down by the Supreme Court in Eisner v. Macomber, supra, and I am therefore unable to follow them.

Being in accord with the view taken by the Circuit Court of Appeals for the Second Circuit in Hewitt Realty Co. v. Commissioner, supra, I have reached the following conclusions of law:

 The value at the expiration of the lease of the building erected by plaintiffs' tenant was not income to them in 1933, the year of erection, and an aliquot part of the depreciated value of the building at the expiration of the lease was not a part of plaintiffs' gross income in 1934 or subject to income tax in that year.

Income tax in the sum of $36.29 was erroneously assessed against and collected from the plaintiffs for the year 1934.

The plaintiffs are entitled to the refund of $36.29, with interest on $8.54 from September 12, 1935, and on $27.75 from December 11, 1935.

I accordingly find in favor of the plaintiffs and against the defendant in the sum of $36.29, with interest on $8.54 from September 12, 1935, and on $27.75 from December 11, 1935.